CITY OF ST. PETERSBURG, *Appellant*, v. W. H. ENG-LISH, ROBERT H. THOMAS AND MARY C. ENGLISH, *Appellees*.

MUNICIPAL LAW — LEGISLATIVE POWER TO ARREST SALE OF BONDS FORMERLY AUTHORIZED — TITLE OF ACT DEALING WITH A MUNICIPAL CORPORATION — CONSTITUTIONAL LAW — AMENDMENTS OF FORMER LAWS EFFECTED BY IMPLICATION — THE WORD "CHARTER" AS APPLIED TO MUNICIPALITIES DEFINED.

1. In the absence of any intervening rights of innocent third persons, the legislature has the undoubted power by proper legislation to arrest and prohibit the *sale* of bonds by a municipality unless their issuance and sale be first ratified by a majority of the votes of such city's electors, even though at the time of such arrest and prohibition such bonds may have been *physically issued* under valid legislative authority formerly granted that authorized their issuance and sale without ratification by the city's electors.

2. The constitutional provision forbidding the amendment or revision of a law by reference to its title only, and requiring the act as revised, or section as amended to be re-enacted and published at length, does not apply to amendments or repeals of statutes that are effected by implication, but applies only to laws that assume *in terms* to revise, alter or amend some particular prior act or section of an act.

3. Chapter 5848, laws approved June 3rd, 1907, entitled: "An Act Amending the Charter of the City of St. Petersburg by

Prescribing the Method of Electing its Tax Assessor and Prohibiting the Issue and Sale of Bonds, Unless Such issue is Ratified by a Majority of the Qualified Electors," *Held,* to be constitutional both in the sufficiency of its title, as being properly expressive of its subject; and as not being obnoxious to the constitutional provision forbidding the amendment of a statute by reference to its title only.

4. The word "charter," as it is called when used in connection with a municipal corporation, consists of the creative act and all laws in force relating to the corporation, whether in defining its powers or regulating their mode of exercise.

This case was decided by Division B

Appeal from the Circuit Court for Hillsborough County.

## Statement.

The appellees as residents, citizens and taxpayers of the municipality of St. Petersburg in Hillsborough county filed the following bill in equity in the circuit court of said county against the said city of St. Petersburg: "Robert H. Thomas, W. H. English and Mary C. English, all of the county of Hillsborough, state of Florida, bring this their amended bill of complaint against the city of St. Petersburg, municipal corporation existing under the laws of the state of Florida, and being situated in the county of Hillsborough, state of Florida, and thereupon your orators complaining say: That they and each of them are residents, citizens and taxpayers of the city of St. Petersburg, in the county of Hillsborough, state of Florida, and are the owners of real and personal property within the limits of said city, and they file this their amended bill of complaint, on their own behalf and on behalf of all other taxpayers of the said city of St. Petersburg; similar situated.

And your orators further complaining say, that on the 21st day of Feb. 1907, the city council of the city of St. Petersburg, under a pretended authority, passed an ordinance designated as ordinance No. 132, wherein it was provided that said city should borrow the sum of $63,000.00 to be expended for municipal improvements, and should issue bonds, payable thirty years from date, drawing six per cent interest, to secure the indebtedness created by said loan, and that the money so borrowed and realized from said sale of said bonds to be expended for the following alleged municipal purposes, to-wit:

First. Twenty-nine thousand five hundred dollars for the improvement of the water front of said city.

Second. Twelve thousand dollars, or so much thereof as may be necessary for the acquiring of water lots, 1, 2, 3, 4, and 5, and the remainder for the improvement of said water lots when acquired.

Third. Sixteen thousand dollars ($16,000.00) for the purpose of erecting a high school building in the city of St. Petersburg.

Fourth. Nine thousand dollars ($9,000.00) for the purpose of widening Central Avenue and to pay for the paving of same when widened.

Fifth. Five thousand dollars ($5,000.00) or so much thereof as may be necessary to pay the city's part of the extension of its sewerage system.

Sixth. Three thousand five hundred dollars ($3,-500.00) for the purpose of constructing certain street crossings in certain parts of said city.

Which said ordinance was duly published and approved in accordance with the charter of said city and is now sought to be enforced as an ordinance of said city, a copy of said ordinance being attached to the amended bill filed herein and marked Exhibit 'A' and

prayed to be taken as a part of this your orators' amended bill of complaint.

And your orators would further represent that the city council of the said city of St. Petersburg under and by virtue of said pretended authority, has threatened to issue as set forth in said ordinance, and cause to be sold, city bonds, to the amount of $63,000.00, the proceeds to be applied in the manner hereinbefore set forth; and have agreed to deliver to one N. A. Mitchel the entire issue of said bonds at a premium of three-fourths of one per cent. when said bonds shall have been favorably passed upon and approved by the courts of the state of Florida.

And your orators would further represent that the said ordinance under which the proposed issue of said bonds is to be made is null and void and the said city of St. Petersburg has no legal right or authority to issue or sell said bonds so provided for under the provisions of said ordinance. That said ordinance provided for the issuing of $16,000.00 of city bonds for the erection of a high school building in the city of St. Petersburg, which purpose is not a municipal purpose and therefore said bonds are null and void; and said ordinance being null in this respect, and the provisions for the said $16,000.00 of city bonds for the erection of said high school building being so closely connected with and is such a part of the entire ordinance as the same cannot be separated therefrom; and the said ordinance never could have been passed by the said city council of St. Petersburg had the said ordinance not contained the provision for $16,000.00 of city bonds for the erection of said high school building in said city.

And your orators would further represent that it is provided for in said ordinance that $29,500.00 of the proposed bonds should be issued for the purpose of im-

proving the water front of the said city of St. Petersburg, which is a provision for the expenditure of $29,-500.00 of the money of the said city of St. Petersburg without authority or warrant of law or.without authority under the charter of the said city. And that the provisions for the issuing of the said $29,500.00 of said city bonds for the improvement of said water front of said city is illegal, null and void, and the said provisions as aforesaid are so connected in said ordinance with other provisions contained in the said ordinance that the same cannot be separated from the entire ordinance of the said city, aforesaid, so as to permit any portion of the said ordinance to remain legal and valid; and that said ordinance never would have been passed by the said council of the said city of St. Petersburg had it not been for said illegal provision for the sum of $29,500 for the said improvement of said water front of said city.

And your orators would further represent that said ordinance was never submitted to a majority of the qualified electors of the said city of St. Petersburg, and that the said city council of the city of St. Petersburg had no authority under the charter of the said city of St. Petersburg or under the laws of the state of Florida, for the issuing of the said bonds of the said city of St. Petersburg, or for the sale thereof, to raise the money for the uses and purposes mentioned in said ordinance without first submitting said ordinance to a vote of the qualified electors of the said city.

And your orators would further represent that none of the bonds as provided for in said ordinance, have yet been sold, and that under and by virtue of an act of the legislature of the state of Florida, approved June 3rd, 1907, entitled, An Act to Amend the Charter of the City of St. Petersburg, by prescribing the method of electing its tax assessor, and prohibiting the issue and

sale of bonds, unless such issue is ratified by a majority of the qualified voters.

It is provided in section two (2) of said act that no bonds shall be issued or sold by the city of St. Petersburg until such issue shall be ratified by a majority of the qualified electors of the said city at an election to be held for such purpose and in such manner as may be provided by ordinance, providing nevertheless that nothing contained in said section shall prohibit the refunding of the indebtedness of the said city in the manner as now provided by section 22 of its charter; and under the provisions of the act of the legislature of the state of Florida, approved June 3rd, 1907, said ordinance of the said city of St. Petersburg No. 132, is absolutely null and void, and the council of the said city of St. Petersburg has no right or authority to issue or sell any of the bonds provided in said ordinance, said ordinance never having been submitted and ratified by a majority of the qualified electors of the said city at an election held for such purpose and in such manner as may be provided for by ordinance.

And your orators would further represent that although said proposed bond issue is null and void and although the city of St. Petersburg has no right or authority to issue and sell said bonds to the said N. A. Mitchel, and will, without authority or warrant of law issue and sell said bonds and create an indebtedness of the said city of St. Petersburg to the damage of your orators and to all other taxpayers of the city of St. Petersburg similar situate, if said bonds are sold as threatened there will be a debt for the payment of which your orators' property and the property of all others similar situate will be held, and your orators' property and the property of all other taxpayers similar situate, within the limits of the city of St. Petersburg, will be assessed

and taxed for the purpose of paying the principal and interest of said bonds to, to the great damage of your orators and to all other taxpayers similar situate.

The premises considered and inasmuch as your orators are without remedy save in a court of equity, and to the end that the city of St. Petersburg, the defendant named herein, be required to answer to this your orators' amended bill of complaint, but not under oath, the answer under oath being hereby expressly waived, and that your honor may order, adjudge and decree that ordinance No. 132 of the city of St. Petersburg be declared null and void and of no effect, and that the city of St. Petersburg, through its council, may be deemed to have no right or authority to issue or sell the bonds provided for in said ordinance, and that your orators may have a writ of injunction restraining and enjoining the city of St. Petersburg, its officers, agents and employes from issuing or selling or otherwise disposing of any of the bonds under said ordinance No. 132 of the said city, dated Feb. 21st, 1907, until the further order of this court and upon failure thereof may be made perpetual.

And that your orators may have such other and full relief in the premises as may be agreeable to equity and to your honor may seem meet.

And may it please your honor to grant unto your orators the state's most gracious writ of injunction, directed to the city of St. Petersburg, the defendant named herein, its officers, agents or employees restraining said city, its officers, agents or employees, from issuing, selling or making sale of any of the bonds of said city provided for under ordinance No. 132 of the said city, dated the 21st day of Feb. 1907."

To this bill the defendant city interposed the following demurrer: "This defendant, by protestation, not

confessing or acknowledging all or any of the matters and things in the said amended bill of complaint contained to be true, in such manner and form as the same are therein and thereby set forth and alleged, demurs to the said amended bill, and for cause of demurrer shows:

First. That the said amended bill does not show such a state of facts as entitles the complainants to the relief prayed, or to any relief, in a court of equity.

Second. Because the said bill does not set out any fact which shows that the said bonds issued by the said city of St. Petersburg are illegal or void in any respect.

Third. That the erection of a high school building in the city of St. Petersburg is a municipal purpose under the law, and the city had a right to issue bonds for said purpose.

Fourth. That the acquisition and improving of the water front of the city of St. Petersburg is a municipal purpose and the said city has a right to issue bonds therefor.

Fifth. That the said city of St. Petersburg was authorized, by its charter, at the time of the issue of said bonds, to issue the same without a vote of the people of St. Petersburg.

Sixth. That the act of the legislature set out in said bill purporting to prohibit the sale of said bonds is void, in that it violates section 16 of article 3 of the constitution of the state of Florida.

Seventh. That the said act of the legislature, if valid, applies only to bonds issued in the future, and has no retrospective effect.

Wherefore, and for divers other good causes of demurrer appearing in the said amended bill of complaint, the defendant demurs to the said bill, and to all the mat-

ters and things therein contained, and prays the judgment of this honorable court whether it shall be compelled to make any further or other answer to the said bill, and prays to be dismissed with its reasonable costs in this behalf sustained."

This demurrer was overruled and the defendant allowed time in which to answer the bill, and to review this order the defendant municipality has appealed here, assigning the said order as error.

*Sparkman & Carter* and *E. H. Myers,* for appellant;

*John P. Wall* and *Chas. C. Whitaker,* for appellees.

TAYLOR, J., *(after stating the facts).*—From the conclusion that we have reached as to the constitutionality and effect of Chapter 5848 of the laws enacted by the legislature of 1907 it becomes unnecessary, if not improper, for us at this time to pass upon or adjudicate any of the other questions or objections touching the issue and sale of the bonds involved that are presented by the bill and demurrer thereto. On June 3rd, 1907, Chapter 5848 was approved, which with its title is as follows:

"An Act Amending the Charter of the City of St. Petersburg by Prescribing the Method of Electing its Tax Assessor and Prohibiting the Issue and Sale of Bonds Unless Such Issue is Ratified by a Majority of the Qualified Electors.

*Be it Enacted by the Legislature of the State of Florida:*

Section 1. The tax assessor shall be elected by the qualified electors of the city of St. Petersburg and shall hold office for the term of two years, and until his successor is elected and qualified; but the present incumbent

38—Vol. 54

shall hold office until the next general election provided for in section 13 of the city charter.

Sec. 2.    The city of St. Petersburg shall have the right to issue and sell bonds for municipal improvements, not to exceed in amount twenty per cent. of the assessed value of all the property subject to taxation within the corporate limits of said city, but no bonds shall be issued or sold until such issue shall be ratified by a majority of the qualified electors of said city, at an election to be held for such purpose and in such manner as may be provided for by ordinance; provided, however, that nothing in this section contained shall prohibit the refunding of the indebtedness of the city of St. Petersburg in the manner as now provided by section 22 of its charter; and, provided further, that the powers conferred by said section 22 of its charter, shall in no wise be restricted by the provisions of this section, save and except that no bonds shall be issued or sold until such issue is ratified by a majority of the electors as hereinbefore prescribed.

Sec. 3.    All laws and parts of laws in conflict with the provisions in this act are hereby repealed.

Sec. 4.    This act shall take effect upon and after its passage and approval by the governor.

Approved June 3, 1907."

The bill alleges, and the defendants demurrer admits, that at the time the above quoted statute became an effective law, if it be constitutional, none of the bonds involved in this suit had been in fact issued or sold, so that there is no right of any innocent third party attaching prior to the passage of the above act involved.    If the above quoted act is not unconstitutional then it seems clear to us that its provisions forbid any further 'steps towards the issue of sale of the bonds involved herein, since the inhibition is clearly stated in the act that: *no*

bonds shall be *issued* or *sold* until such *issue shall be
ratified by a majority of the qualified electors of said
city at an election to be held for such* purpose, and it is
alleged in the bill, and the demurrer admits, that the
proposed issue of bonds involved has never been sub-
mitted to the vote of the electors of the municipality
for their approval and has never been ratified by such
electors.    It is contended, however, by the defendant
city that this act is entirely *prospective* in its effect and
does not in any wise affect anything that had been done
prior to its passage looking towards the issue and sale
of these bonds by such city, and that the city ordinance
authorizing the issue and sale thereof had been duly
and properly adopted by the city long prior to the pas-
sage of this statute.   We cannot agree with this con-
tention.    The provisions of the act are clear and em-
phatic that *no* bonds shall be either *issued or sold* from
or after the *passage and approval of such act* unless their
issue be ratified by the majority vote of the electors of
the city.    The act was approved on June 3rd, 1907,
and at that time none of the proposed bonds involved
herein were either physically issued or sold.    Even if
the city had, prior to the passage of such act, by a duly
enacted and valid ordinance, fully provided for the is-
suance and sale of such bonds, we think it is clear that
the legislature has undoubted power, in the absence of
any intervening rights of innocent third persons, to step
in, even after the physical issuance by a municipality of
its bonds, and say, by proper legislative enactment; you
cannot *sell* these bonds unless their issuance or sale be
first sanctioned by a majority of the votes of your elec-
tors.    And such we think is the effect of this statute.
Immediately upon its becoming a law it at once arrested
the sale of these or any other bonds by such city until
their issue was first sanctioned by the votes of its elec-

tors. Again it is contended for the defendant city that this act does not prohibit the city from an issue of bonds to the extent of ten per centum of the assessed value of the properties in the city without being ratified by vote of the electors. This contention is also untenable.

Section 22 of Chapter 5361 laws of 1903, which was the creative act of the city of St. Petersburg, being its legislative charter, did in terms authorize such city to issue and sell bonds for municipal improvements, without ratification by the votes of its electors, up to ten per centum of the assessed value of the properties in such city, and authorized it further to issue and sell bonds for such municipal improvements to the maximum extent of twenty per centum of the assessed value of the properties in the city, but provided in effect that if bonds to a greater extent than ten per centum of the assessed value of the properties in the city were proposed to be issued such excess issue over such ten per centum should be first ratified by a majority vote of the electors of the city. The change effected by the act of 1907 under discussion, was to take away from such city the power or authority to issue or sell *any bonds to any extent whatsoever,* except bonds for the specific purpose of refunding, compounding or adjusting past indebtedness of such city, unless the issue thereof shall be first ratified by the majority of the votes of its electors.

It is further contended for the defendant city that the said act of 1907 is unconstitutional and void for the reason that it violates section 16 of article 3 of the state constitution which provides as follows: "Each law enacted in the legislature shall embrace but one subject and matter properly connected therewith, which subject shall be briefly expressed in the title; and no law shall be amended or revised by reference to its title only;

but in such case the act, as revised, or section as amended, shall be re-enacted and published at length."

In the case of Lake v. State *ex rel.* Palmer, 18 Fla. 501, text 511 this court, addressing itself to the same provision in the Florida constitution of 1868, approvingly quotes the following from Judge COOLEY: "A law which does not assume in terms to revise, alter or amend any prior act or section of an act, but by various transfers of duties has an amendatory effect by implication, is constitutional. It is not the meaning of this provision of the constitution that upon the passage of each new law all prior laws which it may modify by implication shall be re-enacted and published at length as modified." In State *ex rel.* Turner v. Hocker, 36 Fla. 358, 18 South. Rep. 767, this court has said further that; "The constitutional inhibition against the revision or amendment of statutes or sections of statutes by their titles only, does not apply to amendments or repeals of statutes that are effected by. implication." The act of 1907 under discussion does not *in terms* profess or undertake, either in its title or in the. body of the act, to revise or amend any particular existing statute or section of a statute, but, by implication, its effect is to repeal that feature of section 22 of the then existing law chartering the city of St. Petersburg, that in terms authorized such city to issue bonds without ratification by the votes of its electors up to ten per centum of the assessed values of the properties in the city, except where the proposed issue of bonds was for the specific purpose of refunding past indebtedness of such city. ·

It is further urged that the title of this act is not sufficient under the constitution, in that such title in asserting that it was: "An Act Amending the Charter of the City of St. Petersburg," etc., did not convey any intelligence to the legislature, as to what subject it was

dealing with by such bill.   That the legislature had no knowledge of any such thing as the "charter" of the city of St. Petersburg.   This contention is untenable. In the well considered case of People *ex rel.* City of Rochester v. Briggs, 50 N. Y. 553, where a statute entitled, "An act to amend the several acts relating to the city of Rochester," was assailed as being unconstitutional on the ground that its title did not properly express any subject, Chief Justice CHURCH, delivering the opinion of the court says:  "The city of Rochester is a municipal corporation created by law, and the use of that name in the title refers to such corporation.   This is not only the strict legal construction of the title, but such is its popular signification.   No one could suppose that it meant anything else than the organized political body known by that name.   This name, therefore, "The City of Rochester," is as expressive as if the word corporation had been prefixed to it.   The name signifies the corporation of the city, and, when used in connection with the announcement of a bill to amend the several acts relating to the city, it is impossible to give it any other construction."   In the same case the "charter," when used in connection with a municipal corporation, is defined as follows:   "The charter, as it is called, consists of the creative act and all laws in force relating to the corporation, whether in defining its powers or regulating their mode of exercise."   And the court in the same case says further:   "An act, therefore, in relation to the city of Rochester, whether the word corporation is used or not, is an act which may effect any or all of the corporate powers of the city; and when a bill is advertised as an act to amend the several acts in relation to the city of Rochester, the subject of the corporate powers of the city and their regulation is still more distinctly expressed.    Such a title expresses a subject comprehen-

sive enough to embrace all the details of a city charter
* * * . The word "charter" adds nothing to the
title, in law or common understanding. At most, it
could only be regarded as slightly more expressive of
the subject than this; but substantially it is the same."
Addressing this reasoning of the New York court to the
case in hand, when the title of the act, Chapter 5848,
advertised that it was "An Act Amending the Charter
of the City of St. Petersburg," it was equivalent to pro-
claiming that the legislature might under the proposed
act amend the creative act and any or all laws in force
relating to the municipal corporation of the city of St.
Petersburg, except that such title further restricted the
proposed amendments to the matter of the election of a
city tax assessor, and to a prohibition against the issue
and sale of city bonds unless ratified by the votes of the
city electors. State *ex rel.* Arosin v. Ehrmantraut, 63
Minn. 104, 65 N.W. Rep. 251. The *provisos* to section 2
of said Chapter 5848, are in effect, nothing more than
a declaration upon the part of the legislature that it was
conscious of the fact that said section effected by impli-
cation a partial repeal or amendment of section 22 of the
charter or creative act of the municipal corporation, and
a further legislative construction and declaration as to
the particular extent to which such implied repeal or
amendment should be held to go. Exclusive of its pro-
visions as to the election of a city tax assessor, the sum
total of this amendatory act is that the city of St. Pe-
tersburg is by it prohibited from issuing or selling any
bonds unless their issue is first ratified by a majority
vote of the electors of said city, except bonds for the
specific purpose of refunding the city's past indebtedness;
and we think, from the standpoint of the constitutional
assaults made upon it, that it is valid and effectual for
that purpose. Since what has been said disposes of the

entire case, the decree of the court below appealed from in said cause is hereby affirmed at the cost of the appellant.

HOCKER and PARKHILL, JJ., concur;

SHACKLEFORD, C. J., and COCKRELL and WHITFIELD, JJ., concur in the opinion.