WARREN W. BUCKINGHAM v. THE STATE OF DELAWARE, upon the relation of Clair John Killoran, Attorney-General.

*(January 20, 1944.)*

HARRINGTON, Ch., LAYTON, C. J., RICHARDS, RODNEY and SPEAKMAN, J. J., sitting.

*Harry K. Hoch* and *P. Warren Green* for plaintiff in error.

*William H. Foulk* and *Howard E. Lynch, Jr.,* for defendant in error.

Supreme Court, November Session, 1943.

RODNEY, J., delivering the opinion of the Court:

This case in the final analysis depends entirely upon the applicability and validity of the Act of Assembly quoted in the statement of facts. It is conceded that Buckingham, at the time of his election as Mayor of Middletown, had every qualification as required by the Charter of the Town, and that his election was valid, unless, under the quoted Act of Assembly, he was ineligible to be a candidate for the office of Mayor of Middletown by reason of the fact that he was, at the time, a Justice of the Peace.

██ It has been suggested that the constitutionality of the cited statute need not be here determined, but that the conclusion of the Court could be based upon the inapplicability of the Act to a municipal office, such as Mayor of Middletown. It is argued that the words "elective office," as used in the Act, mean a State or County office, as contrasted with an officer of a municipal or other corporation. For this view may be cited *State v. Churchman,* 3 *Penn.* (19 *Del.*) 361, 51 A. 49, and other Delaware cases. We recognize the general rule that Courts are hesitant to undertake the consideration of matters involving the constitutionality of a law if the pending litigation may be determined upon another basis. We adhere to such rule, but recognize that to it some exceptions must exist, and that when the questions presented involve matters of great public interest and universality of application, the Court should not so circum-

scribe its conclusions as to unduly defeat the remedy of the parties or the object of the litigation. We note both in the title of the Act and in its purview that the Act is made expressly applicable to at least some municipal offices insofar as ineligibility as a candidate is concerned. The ineligibility as a candidate and the qualifications of an office to which such candidate aspires are, as we shall later discuss, quite closely connected. The constitutionality of the cited Act was directly attacked in the Court below. The conclusion of the Court below, so far as we are informed, was based solely on the constitutionality of the Act. Such question of constitutionality has been elaborately briefed and argued in this Court, and to such question we must now address ourselves.

It will be noted that the statute makes it "unlawful" for designated members of the judiciary to become a candidate for elective office. No penalty being provided, we do not think the Act was intended as a criminal offense, but that the word "unlawful" was used in the sense of making the candidacy of such judicial officers as contrary to law and as affecting the eligibility of such candidate to fill such office, if elected.

We shall not pause to discuss, at this point and at length, the traditional separation of powers in a constitutional government, such as ours, into the three coordinate branches of government, nor the inability of one branch to encroach upon the constitutional rights of the others. The fact of a residuum of power resting in the legislative branch means that residuum not granted by the Constitution to the Executive or Judicial branches, for the Constitution is equally binding on all, and the residuum of power only exists when the constitutional rights, powers and liabilities of the various branches of government are taken into account.

A statute such as now under consideration must be viewed in two aspects. When it affirmatively states that no constitutional judicial officer, during his term nor within

six months after its termination, may be a candidate for an elective office, it states an affirmative disqualification of the judicial officer. It just as effectively, however, adds to the elective office to which the judicial officer has aspired a further and additional qualification to those specified in the Constitution, such additional qualification being "that he may not be, at the time, a judicial officer nor have been such within the past six months." To make this clear let us present a concrete example. Suppose a judicial officer aspires or is persuaded to seek the elective office of Governor. The quoted statute declares affirmatively the disqualification of the judicial officer. The *Constitution of Delaware, Art. III, Sec.* 6, prescribes the requisite qualifications for one to hold the office of Governor, and these qualifications refer both to age and residence. If the quoted statute be valid there must implicitly be added to the qualifications of age and residence an additional one, viz., "that he may not be a judicial officer at the time of his candidacy for the office of Governor, nor have been such within six months prior to such candidacy."

With these thoughts in mind we may pause to see some elective offices coming within the terms of the Act, and consider its validity as effecting new qualifications governing the eligibility to hold such offices. These offices may be grouped as follows:

a. Federal offices such as United States Senators and Representatives in Congress.

b. Constitutional State offices.

c. Constitutional County offices.

d. Municipal offices created by special Act of Assembly.

e. Statutory offices created by general Act of Assembly.

a. The authorities are uniform that where the qualifications for Federal offices are set out in the Federal

offices for which no constitutional qualifications are prescribed, would seem to be the extent to which the Act under discussion could apply. As to the latter we express no opinion. The statutory elective offices as now existent and as drawn to our attention are so greatly limited in numbers as not to justify the thought that the Act was intended to apply to them alone or would have been adopted with that end alone in view.

We now come to the other aspect of the Act, viz., the affirmative act of disqualifying substantially every judicial officer of the State from being a candidate for an elective office during his term of office, or until six months after his term of office shall have terminated. The Constitution by *Art. IV, Sec.* 1, declares:

"The judicial power of this State shall be vested in a Supreme Court, a Superior Court, a Court of Chancery, an Orphans' Court, a Court of Oyer and Terminer, a Court of General Sessions, a Registers' Court, Justices of the Peace and such other courts as the General Assembly, with the concurrence of two-thirds of all the members elected to each House, shall from time to time by law establish."

Because the first six mentioned Courts are held by six judges who by *Art. IV, Sec.* 2, are expressly denominated as "State Judges," and named as Chancellor, Chief Justice and four Associate Judges, so in considering the application of the Act in question we will adopt the same grouping. We will consider the Act as it presents affirmative disqualifications, as follows:

1. To constitutional Judicial officers

(a) State Judges expressly provided in the Constitution.

(b) Justices of the Peace.

(c) Judge of the Register's Court.

2. Statutory Judicial officers.

Disqualification from holding office is provided by *Article II, Sec.* 21 of the *Constitution.* There it is provided that no person convicted of embezzlement of public money, bribery, perjury, or other infamous crime shall be capable of holding any office of trust, honor or profit under this State.

■ d. The application of the Act in question to municipal corporations must receive some passing consideration. If the present Act adds additional qualifications for municipal elective offices as set out in the various municipal charters, then such effect must result from a consideration of the Act as a pro tanto amendment to such corporate charters. That the Act does not operate as an amendment to any municipal charter is quite apparent. Municipal corporations, under the Constitution, are not embraced within the present General Corporation Law but their charters, and amendments thereto, are had by special Act of the Legislature. Under *Article IX, Sec.* 1 of the Constitution, such Acts require two-thirds vote of each House of Assembly. It is alleged in the brief of the plaintiff in error, with tender of proof thereof, and not denied by the defendant, that no such vote was recorded for the Act, and the Act itself does not purport to have been so passed.

■■ e. We now come to statutory offices created by general Act of Assembly. These offices are created by legislative Act and, in turn, can be abolished. Being creations of the legislative will we see no reason why such reasonable and uniform qualifications may not be attached as the legislative wisdom may dictate. Of such nature was *In re Deuel,* 112 *App. Div.* 99, 98 *N. Y. S.* 297, cited by defendant. See also *State ex rel. Workman v. Goldtwait,* 172 *Ind.* 210, 87 *N. E.* 133, 19 *Ann. Cas.* 737; *Jansky v. Baldwin,* 120 *Kan.* 332, 243 P. 302, 47 *A. L. R.* 476; *People v. McCormick,* 261 *Ill.* 413, 103 *N. E.* 1053, *Ann. Cas.* 1915A, 338, *Annotation.*

■ Statutory offices, together with constitutional

Constitution a State may not change those qualifications or add others thereto. This is true even though the State regulation be according to the Constitution of the State. *State v. Howell,* 104 *Wash.* 99, 175 P. 569. *Stockton v. McFarland,* 56 *Ariz.* 138, 106 P. 2d 328.

 .b and c. Those constitutional offices coming within these two groups may be combined, for much of the reasoning is applicable to both. It is the general law that where a constitution creates an office and perscribes the qualifications that the incumbent must possess, that the legislature has no power to add to these qualifications. 1 *Cooley's Constitutional Limitation,* 8th *Ed.,* 140; *Meecham on Public Offices, Secs.* 65 and 98; *Throop on Public Offices, Sec.* 73; *Annotations,* 47 *A. L. R.* 481 and 97 *Am. Dec.* 264.

Indeed we may say that these principles are conceded by the defendant in error, for in discussing the power of the Legislature to impose upon constitutional officers qualifications in addition to those set out in the Constitution, the defendant, in his brief states he "takes no position on this issue." The defendant contends that the Act in question adds no new qualification for any office, but merely a disqualification of the candidacy of named judicial officers. This contention we shall hereafter briefly consider.

 The Constitution has expressly set out the qualifications for the office of Governor in *Art. III, Sec.* 6; for Lieutenant Governor, *Art. III, Sec.* 19; for State Senators and Representatives in *Art. II, Sec.* 3. The Constitution by *Art. III, Sec.* 11, provides that no person shall be elected or appointed to an office within a county who shall not have the right to vote for a representative in the General Assembly, and been a resident therein for one year next before his election or appointment. Qualifications of voters, too, are explicitly set out in the Constitution, *Art.* 5, § 2, and the authorities are uniform that no power exists in the Legislature to add to these qualifications.

1 (a) It is at this point that attention must be drawn again to the fact that the Judicial branch of the government created by the Constitution, and with its duties, powers and qualifications prescribed by express constitutional provision, is not subject to unlimited control by either of the other co-ordinate branches of government. The authorities are so uniform upon the point as to make citation unnecessary.

The State Judiciary is created solely by constitutional provision. The Constitution prescribes the qualifications, tenure and methods of appointment of these constitutional offices. As to these offices the Legislature has a limited control. It can, of course, by proper legislation affect the character and amount of matters coming within the judicial jurisdiction, but the judiciary being an independent and constitutional co-ordinate branch of government, is not subject to the unlimited control of the legislative branch.

We are convinced from all the authorities that the Legislative branch of government has no authority to add further qualifications in connection with a constitutional judicial officer where the qualifications are provided by the Constitution. In the quoted Act the Legislature attempts to disqualify constitutional Judges from exercising those constitutional rights inherent in every qualified citizen. Insofar as power is concerned, there is little difference between the right to prescribe additional qualifications on the one hand and to impose absolute disqualifications on the other.

In a constitutional government every citizen possessing the necessary qualifications has the right to aspire to any office within the government. We know of no more right in the Legislature to declare every Judicial officer, of whatever rank, as utterly ineligible to be a candidate for elective office than it has to make such declaration as to any other officer or any other person or group within a community. The Constitution, by *Article III, Sec.* 5, states that no one shall be

elected to the office of Governor for the third time. We think it could not seriously be asserted that the Legislature could enact, that, in addition to this limitation, and while an incumbent was in office during his first term, that he could not be a candidate again for that office, or for any elective office. We think it could not be asserted that the Legislature could exercise this power as to all officers of the government. The existence of such power could inevitably lead in its application to all persons of a particular class, religious sect or political affiliation. The mere fact that in Delaware members of the Judiciary are appointed and not elected, and the laudable desire that they should so far as possible be divorced from political connections and entanglements, does not give to the Legislature such transcendent powers over the Judiciary as to deprive them of those same political rights possessed by every citizen of the State.

In *Barker v. People,* 3 *Cow.* (*N. Y.*) 686, 15 *Am. Dec.* 322, Chancellor Sanford well expresses these views as follows:

"Eligibility to office, is not declared as a right or principle, by any express term of the constitution: but it results as a just deduction from the express powers and provisions of the system. The basis of the principle, is the absolute liberty of the electors and the appointing authorities to choose and to appoint, any person, who is not made ineligible by the constitution. * * * * [Eligibility] belongs equally, to all persons whomsoever, not excluded by the constitution. I therefore conceive it to be entirely clear, that the legislature cannot establish arbitrary exclusions from office or any general regulation requiring qualifications, which the constitution has not required. If, for example, it should be enacted by law, that all physicians, or all persons of a particular religious sect, should be ineligible to public trusts * * * any such regulation would be an infringement of the

constitution; and it would be so, because, should it prevail, it would effect, an alteration of the constitution itself."

See also *People v. McCormick*, 261 *Ill*. 413, 103 *N. E.* 1053, *Ann. Cas*. 1915A, 338.

No case is cited to us where such power as here attempted has been exercised or claimed, and a careful independent search has disclosed none. The case of *In re Richardson*, 247 *N. Y*. 401, 160. *N. E*. 655, relied upon by the defendant, lends no support to the defendant, but entirely sustains the inability of the legislature to control the constitutional judiciary by the imposition upon such judiciary the performance of non-judicial functions.

1 (b) Much that has been said as to General constitutional judicial officers is applicable to Justices of the Peace. They are constitutional officers whose method of appointment and tenure is prescribed by the Constitution. The Legislature, as to them, has some control, for by *Article IV, Sec*. 31, it may determine the number of Justices, and by *Sec*. 30 regulate the jurisdiction. There is no suggestion in the Constitution as to the power of the Legislature to disqualify Justices from exercising those same inherent rights that may be exercised by others. No salary is attached to the office or provided for by any law, so no argument as to a desire to conserve the time of the Justices or prevent outside interests can, as to them, have much validity.

1 (c) As to the Register's Court:

With reference to this judicial office there is shown even more strongly the inability of the Legislature to impose the disqualifications provided by the quoted Act.

The Register's Court is, as we have seen, made a part of the judicial system of the State by *Art. IV, Sec*. 1 of the *Constitution*. By *Art. IV, Sec*. 33, the Register's Court is held by the Registers of Wills of the several counties. By *Article*

*III, Sec.* 22, the term of office of Registers of Wills is fixed, and they are made elective by the qualified voters of the respective counties. If the quoted Act be valid, it means that no Register of Wills could be a candidate for re-election to succeed himself, and this purely by virtue of a legislative Act. The same constitutional provision that governs the elections of Registers of Wills provides also for Sheriffs, and as to them the Constitution provides "no person shall be twice elected Sheriff in any term of four years." No limitation appears in the Constitution as to the right of a Register of Wills to be a candidate for re-election, and we know of no right in the Legislature to limit every constitutional officer to one term, in the absence of any constitutional grant of such power.

2. As to statutory judicial officers legally created by the Legislature, we readily agree that the Legislature has a broad latitude as to the imposition of qualifications and disqualifications. As to the application of a disqualification to an incumbent appointed before the adoption of the disqualification we express no opinion.

All that we have heretofore said has had general reference to the application of the quoted Act as to disqualifying judicial officers while in office from being candidates for elective office. The quoted Act goes much further. It disqualifies judicial officers during the respective terms "and until six months thereafter."

It is stated in the briefs that the Court below thought this latter provision was unconstitutional but severable. No opinion was written in the case and the record discloses no finding in the matter. In view of our opinion as heretofore expressed, and in view of the fact that Buckingham was a Justice of the Peace at the time of his election as Mayor of Middletown, we shall not prolong our opinion in the discussion of this phase of the matter. It would be difficult to sustain a legislative Act which disqualified a Justice of the

Peace or other judicial officer who had been out of office for five months from being a candidate for elective office, and from exercising those same rights enjoyed by all other private citizens like himself. If such power existed for six months it is difficult to fix any definite time for its exercise and the Act might almost in effect, become a Bill of Attainder. Unless the Act was severable the invalidity of this portion of the Act is available to those coming within the purview of the Act. The Court below may have viewed the provisions as severable and thought that the Legislature would have passed a portion of the Act without the remainder. The severability of an Act and the determination of what limited portion the Legislature would have passed is never an easy question, and in view of our conclusion becomes a question not necessary to be considered.

We are of the opinion that *Chapter* 220, *Vol.* 43, *Laws of Delaware,* is unconstitutional, and that Warren W. Buckingham was not thereby rendered ineligible to be a candidate for the office of Mayor of the Mayor and Council of Middletown.

The judgment of the Court below is reversed.