## OPINION OF THE JUSTICES of the Supreme Court in Response to Question Propounded by the Governor of Delaware.

Supreme Court of Delaware.

July 16, 1968.

To His Excellency Charles L. Terry, Jr. Governor of Delaware

Reference is made to your letter dated July 8, 1968, addressed to the Chief Justice, requesting the opinions of the Justices, un-

der 29 Del.C. § 2102,[1] upon the following question:

"Does Senate Bill 363, as amended by Senate Amendments 1 and 3 which provides for an end to dual job holding, contravene the provisions of Article 2, Section 3 of the Delaware Constitution, which sets forth qualifications of members of the General Assembly and which in no way speaks to this question of dual job holding?"

Your letter stated that your request is made for the following reason:

"The question of the constitutionality of this Act has become one of crucial importance to the general public and becomes even more important as we come closer to election day, as all persons interested in running for public office this year need to know if Senate Bill 363 is valid and effective. * * *."

Senate Bill No. 363, as amended by Senate Amendments 1 and 3, provides:

"No Senator or Representative of the General Assembly shall be entitled to receive any wages or salary from the State Treasury of the State of Delaware other than in his capacity as a member of the General Assembly."

In responding to the question, we find the following provisions of the Delaware Constitution especially applicable:

Art. 2, § 3 provides:

"§ 3.   Qualifications of members.

"Section 3.   No person shall be a Senator who shall not have attained the age of twenty-seven years and have been a citizen and inhabitant of the State three years next preceding the day of his election and the last year of that term an inhabitant of the Senatorial District in which he shall be chosen, unless he shall have been absent on the public business of the United States or of this State.   No person shall be a Representative who shall not have attained the age of twenty-four years, and have been a citizen and inhabitant of the State three years next preceding the day of his election, and the last year of that term an inhabitant of the Representative District in which he shall be chosen, unless he shall have been absent on the public business of the United States or of this State."

Art. 2, § 14 provides in part:

"* * *.   No * * * person holding any office under this State * * * shall during his continuance * * * in office be a Senator or Representative; * * *."

■   We look first to the effect of Art. 2, § 14.   That provision of our Constitution was considered by the Court in Banc of Delaware in State ex rel. Biggs v. Corley, 6 W.W.Harr. 135, 172 A. 415 (1934).   Referring to Art. 2, § 14 and incompatibility of office, it was there stated:

"* * *   incompatibility may be declared by statutory or constitutional enactment, and from our first constitution, in one form or another, with respect to members of the legislature, dual office holding has been prohibited.   See Const. 1776, art. 18.   From the beginning of our constitutional history, our state government has been divided into the three great departments, legislative, executive and judicial, and to preserve the freedom and independence of each, and to take care that those chosen to represent the people in the legislature should be representatives and nothing more, it is provided that no person holding any office under this state shall during his continuance in office be a senator or representative."

So saying, the Court in Banc held that an incompatibility of office is declared by Art.

---

1.   29 Del.C. § 2102 provides:
   "§ 2102.   Request for judicial opinions
      "The Governor may, whenever he requires it for public information, or to enable him to discharge the duties of his office with fidelity, request the members of the Supreme Court to give him their opinions in writing touching the proper construction of any provision in the Constitution of this State or of the United States, or the constitutionality of any law enacted by the Legislature of this State."

2, § 14 sufficient to invoke the general principle of law that where the holder of an office accepts another incompatible office, the acceptance of the second office operates as a resignation or renunciation of the first as fully and effectively as though the relinquishment of the first office had been an intentional and voluntary act.

■ Turning back to Senate Bill No. 363, insofar as the Bill applies to members of the General Assembly who are holders of other State "offices",[2] it is unquestionably in accord with Art. 2, § 14 and, therefore, constitutional.

There remains the question, however, of whether Senate Bill 363 is constitutional insofar as it applies to a member of the General Assembly who is a "mere employee" of the State and not the holder of another State "office" within the scope of Art. 2, § 14.

■ Art. 2, § 3 of our Constitution, specifying the other qualifications of members of the General Assembly, becomes controlling at this point. In Buckingham v. State ex rel. Killoran, 3 Terry 405, 35 A.2d 903, 906 (1944), this Court approved the general principle of law that where the Constitution creates an office and prescribes the qualifications that the incumbent must possess, the Legislature has no power to add to those qualifications by statute. Applying that principle, it follows that Senate Bill 363 is unconstitutional insofar as it purports to disqualify as a member of the General Assembly one who is an employee of the State but not the holder of another State "office".

On its face, Senate Bill 363 may appear to be a declaration governing the employment policies and practices of State agencies—and not necessarily a qualification of membership in the General Assembly. To so conclude, in our opinion, would be to disregard the practicalities of the matter. In effect, the requirement that a member of the General Assembly be removed from the State payroll (except for compensation as a Legislator) means that no member of the General Assembly may be a State employee; for discontinuance of wages or salary ordinarily means termination of employment, in the full sense of the word. Such affirmative disqualification would add to the office of member of the General Assembly a further qualification, i. e., that a member may not be a State employee, in addition to the qualifications specified in the Constitution. Under the holding of this Court in Buckingham v. State ex rel. Killoran, supra, a statute having that effect is unconstitutional.

Accordingly, we are of the opinion that Senate Bill 363 is unconstitutional insofar as it applies to members of the General Assembly who are employees of the State but who do not come within the category of holders of other State "office" within the meaning of Art. 2, § 14.

■ It would thus appear that the elimination of members of the General Assembly from all other public employment must be achieved by amendment to the Constitution by the prescribed action of two successive General Assemblies. It cannot be accomplished by simple statute.

The foregoing represents the unanimous opinion of all of the Justices.

Respectfully submitted,

DANIEL F. WOLCOTT,
Chief Justice,

JAMES B. CAREY,
D. L. HERRMANN,
Associate Justices.

2. A state office involves the concepts of tenure, oath, fees and emoluments, and the authority and duty to exercise some part of the sovereign power of the State either in making, administering, or exe-cuting its laws. Such State "office" is to be distinguished from "mere public employment". See State ex rel. Biggs v. Corley, supra; Raduszewski v. Superior Court, Del., 232 A.2d 95 (1967).