**In re OPINION OF THE JUSTICES of the Supreme Court in Response to a Question Propounded by the Governor of Delaware.**

**To His Excellency Russell W. Peterson, Governor of Delaware.**

Supreme Court of Delaware.

April 7, 1971.

Reference is made to your letter of March 16, 1971, requesting the opinions of the Justices upon the following question:

> "Is House Bill 84, as amended, which was adopted by a simple majority of the members of both houses of the Legislature, valid under Article II, Section 19, and Article IX, Section 1 of the Delaware Constitution [Del.C.Ann.]?"

Your letter requests the opinions, under 10 Del.C. § 141 [1], because there is a need for public information as to the constitutionality of the Act, and because you need to know the answer in order to determine whether to approve matching State appropriations contemplated by the Act.

Because of the importance of the matter, we appointed counsel to brief and argue both the negative and affirmative sides of the question. We express our commendation and appreciation to James M. Tunnell, Jr., Esquire, Andrew B. Kirkpatrick, Jr.,

[1]. 10 Del.C. § 141 provides:

"The Justices of the Supreme Court, whenever the Governor of this State shall require it for public information, or to enable him to discharge the duties of his office with fidelity, shall give him their opinions in writing touching the proper construction of any provision in the Constitution of this State or of the United States, or the constitutionality of any law enacted by the Legislature of this State."

Esquire, and Lawrence C. Ashby, Esquire, who presented the negative on the question, and Victor F. Battaglia, Esquire, and Clement C. Wood, Esquire, who presented the affirmative on the question.

House Bill 84 provides as follows:

"Section 1. Chapter 1, Title 22 of the Delaware Code is amended by adding a new section thereto numbered Section 106 to read as follows:

" '§ 106. Debt limit of cities with population in excess of 50,000

"(a) All cities in the State of Delaware having a population in excess of 50,000 as enumerated in the most recent Federal census which have the power to borrow money and issue negotiable bonds and notes to evidence such borrowing are hereby authorized to issue such bonds, and notes in anticipation of the issuance of such bonds, in an amount not in excess of sixteen percent of the assessed valuation of real estate taxable by such city. In computing the aggregate principal amount of such bonds and notes of such city, there shall be excluded (1) all bonds and notes issued by such city for the purpose of providing a supply of water for such city; and (2) all bonds and notes issued by such city for sewer purposes as a part of the sewer system of such city for which such city collects rates, rents or fees; and (3) any bonds and notes issued by such city for school purposes but not in excess of three per centum of the assessed valuation of the real estate taxable by such city; however, any such city may issue school bonds and notes within its debt limitation in excess of the three per centum which is excluded from the aggregate principal amount which may be issued; and (4) all bonds and notes issued by such city for any other prupose for which an exclusion is authorized by law including but not limited to exclusions for bonds and notes issued for Parking

Authority purposes and Urban Renewal purposes; (5) any guaranty or other obligation incurred pursuant to any law and which said law provides shall be excluded from the computation of any debt limitations of such city; and (6) bonds issued to fund outstanding notes not otherwise excluded, until such notes are retired.

"(b) Bonds may be issued within the limits prescribed herein notwithstanding any debt or other limitation prescribed by any other law provided however that such bonds, or notes issued in anticipation of the issuance of such bonds, must be approved and authorized by the governing body of such city in the same manner as all other obligations of such city are authorized.'

"Section 2. This Act shall replace the debt limit for such cities provided in any other law, special or general.

"Section 3. This Act shall take effect immediately."

I.

Article II, Section 19 of the Delaware Constitution provides as follows:

"Section 19. The General Assembly shall not pass any local or special law relating to fences; the straying of live stock; ditches; the creation or changing the boundaries of school districts; or the laying out, opening, alteration, maintenance or vacation, in whole or in part of any road, highway, street, lane or alley; provided, however, that the General Assembly may by a vote of two-thirds of all the members elected to each House pass laws relating to the laying out, opening, alteration or maintenance of any road or highway which forms a continuous road or highway extending through at least a portion of the three counties of the State."

Counsel are in agreement that House Bill 84 is unrelated to any subject men-

tioned in Del.Const. Art. II, Sec. 19. It is our opinion that the Act does not conflict with that constitutional mandate.

## II.

■ The pertinent portions of Article IX, Section 1 provide as follows:

"No corporation shall hereafter be created, amended, renewed or revived by special act, but only by or under general law, nor shall any existing corporate charter be amended, renewed or revived by special act, but only by or under general law; but the foregoing provisions shall not apply to municipal corporations, banks or corporations for charitable, penal, reformatory, or educational purposes, sustained in whole or in part by the State * * *. No general incorporation law, nor any special act of incorporation, shall be enacted without the concurrence of two-thirds of all the members elected to each House of the General Assembly."

House Bill 84 purports to be a general Act applicable to all municipal corporations with a population of over 50,000. The City of Wilmington is, however, the only municipality in the State which presently meets this qualification. That fact is a matter of common knowledge, of which we take judicial notice. Affiliated Enterprises v. Waller, Del.Super., 1 Terry 28, 5 A.2d 257, 261 (1939). Our discussion will accordingly be limited to a consideration of the effect of House Bill 84 upon Wilmington's Charter, and the consequences thereof under Del.Const. Art. IX, Section 1.

■ A municipal charter consists of the creative Act of incorporation, together with all those laws in force which relate to the incorporation, whether in defining the powers of the municipal corporation or in regulating the mode of the exercise thereof. Trailway Oil Co. v. City of Mobile, 271 Ala. 218, 122 So.2d 757 (1960); City of St. Petersburg v. English, 54 Fla. 585, 45 So. 483 (1907); Tommasi v. Bolger, 114 App.Div. 838, 100 N.Y.S. 367 (1906);

Fitzgerald v. City of Cleveland, 88 Ohio St. 338, 103 N.E. 512 (1913). Under that definition, a statute does not fail to become a part of the charter of a municipality simply because the statute is not labeled as such. There may be a charter amendment by necessary implication as well as by express reference. Abrahams v. Superior Court, Del.Super., 131 A.2d 662 (1957). We are of the opinion that, under that definition, House Bill 84 would constitute a *pro tanto* amendment to the Charter of the City of Wilmington. This conclusion is based upon the following rationale:

The debt limit for the City of Wilmington was established by the Act of 1907, entitled "An Act to alter and re-establish the statutes relating to the City of Wilmington," 24 Del.L. Ch. 177, Section 14. That Act consisted of a long series of amendments to the Act of 1883, entitled "An Act to Revise and Consolidate the Statutes relating to the City of Wilmington," 17 Del. L. Ch. 207. The latter constituted the basic City Charter of Wilmington prior to the Home Rule Charter of 1965. It was provided by 24 Del.C. Ch 177, Section 14, that the debt limit must not exceed ten percent of the "assessed value of the real estate of said City"; and that if the sum to be borrowed exceeded $50,000., the ordinance authorizing the debt required the approval of the electorate of the City. The debt limitations upon the powers of the City government, thus prescribed, were last changed in 1959 by 52 Del.L. Ch. 175, entitled "An Act To Authorize The Mayor and Council of Wilmington To Issue Negotiable Bonds and Notes For Lawful Purposes and To Provide for Their Payment." the latter act retained the ten percent limit, but eliminated the referendum feature.

Clearly, by necessary implication, 52 Del.L. Ch. 175 was an amendment to 24 Del.L. Ch. 177, which in turn was expressly an amendment to 17 Del.L. Ch. 207, the basic City Charter then existing. All three of these enactments had the concurrence of two-thirds of the members elected to each House of the General Assembly.

It appears equally clear to us that House Bill 84, insofar as it may apply to the City of Wilmington, would be an amendment of 52 Del.L. Ch. 175. As such, by the historic statutory evolution outlined, House Bill 84 would likewise constitute an amendment to the Charter of Wilmington. As we have stated, statutes may be nonetheless amendatory to a City Charter by necessary implication, despite the absence of any express reference to the Charter therein. The force and effect of a statute determines its nature and character, not labels or the lack thereof.

■ It must be understood, in this connection, that the Wilmington Home Rule Act, 22 Del.C. § 802, provides the methods and procedures for amendments to city charters. Any provisions of the Wilmington Charter of 1883, as amended, that were unchanged by the Home Rule Charter of 1965, survived the adoption of the latter Charter. Wilmington's Home Rule Charter of 1965 is silent on the subject of debt limitation. It follows that 52 Del.L. Ch. 175 stands as the last enactment on debt limitation for the City of Wilmington, and as such, the last City Charter amendment on that subject.[2] As we have said, House Bill 84 would constitute an amendment to 52 Del.L. Ch. 175 and it, therefore, would likewise constitute an amendment to the City Charter. This conclusion is supported by Buckingham v. State ex rel. Killoran, 3 Terry 405, 35 A.2d 903 (1944).

We come then, to the question of the degree of General Assembly concurrence necessary, under the Delaware Constitution, for the lawful enactment of an amendment to an amendment of the last basic Wilmington City Charter (17 Del.L. Ch. 207) prior to the present Home Rule Charter.[3]

The last basic Charter of Wilmington (17 Del.L. Ch. 207) is a special act of incorporation. Any amendment thereto is likewise a special act of incorporation. These conclusions necessarily follow from earlier expressions of the law of our State.

In Opinion of the Justices, Del., 232 A. 2d 103 (1967), a question had been propounded by the Governor relating to the validity of a bill amending the General Corporation Law of the State. It was there concluded that the same constitutional requirement for the passage of a General Corporation Law, being Del.Const. Art. IX, § 1, is required for the amendment of that Law, citing State ex rel. Morford v. Emerson, 1 Terry 328, 10 A.2d 515 (1939). By unavoidable analogy to the question before us, since an amendment to the General Corporation Law is itself a "general corporation law," an amendment to a "special act of incorporation," i. e., the basic City Charter, is a "special act of incorporation." That the charters of municipal corporations and amendments thereto are "special acts" of the Legislature was recognized in Buckingham v. State ex rel. Killoran, 3 Terry 405, 35 A.2d 903 (1944), and Abrahams v. Superior Court, *supra.* Any other conclusion would permit a municipal charter, requiring a two-thirds vote, to be changed fundamentally by amendments having a lesser concurrence.

It follows from the foregoing, in our opinion, that House Bill 84, being amendatory to the Charter of the City of Wilmington, is a special act of incorporation within the meaning of Del.Const. Art. IX, Sec. 1; and that the lawful enactment thereof, insofar as it may apply to the City of Wilmington, requires the concurrence of

---

2. It is noteworthy that the Code of the City of Wilmington, Delaware, Volume I, pp. 152–156, includes 52 Del.L. Ch. 175, *in toto,* as one of the "related laws" applicable "to the city which, in the opinion of the city solicitor, were not repealed or superseded by the Charter of the city." See Editor's note, p. 127.

3. The distinction is drawn because the Home Rule Act contains detailed specifications for amendments of Charters adopted thereunder, without the necessity of any action by the General Assembly. 22 Del.C. §§ 811–814.

two-thirds of all the members elected to each House of the General Assembly.

Accordingly, it is our opinion that the question propounded must be answered in the negative insofar as House Bill 84 may be applicable to the City of Wilmington.

The foregoing is the opinion of each of the undersigned.

Respectfully submitted,

DANIEL F. WOLCOTT
Chief Justice

JAMES B. CAREY

DANIEL L. HERRMANN
Justices