**OPINION OF THE JUSTICES of the Supreme Court in Response to a Question Propounded by the Governor of Delaware.**

Supreme Court of Delaware.

April 5, 1972.

To His Excellency Russell W. Peterson Governor of Delaware:

Reference is made to your letters dated January 13, 1972 and January 25, 1972, requesting the opinions of the Justices upon the following question:

"Is section 4309, Title 15, Delaware Code as enacted in 57 Delaware Laws, Chapter 169, valid under the Delaware Constitution?"

As the basis for the request, your letter explains:

" * * * the question is of considerable political importance insofar as the coming election is concerned, because Delaware election officials need guidance as to how to set up the November ballot * * *."

Your letter concludes that the opinions are required for public information and to enable you to discharge the duties of your office with fidelity.[1]

---

1. 10 Del.C. § 141 provides:
   "§ 141. Opinions of the Justices upon request of the Governor
   "The Justice of the Supreme Court, whenever the Governor of this State shall require it for public information, or to enable him to discharge the duties of his office with fidelity, shall give him their opinions in writing touching the proper construction of any provision in the Constitution of this State or of the United States, or the constitutionality of any law enacted by the Legislature of this State."
   See also 29 Del.C. § 2102.

We have had the valuable assistance of Samuel R. Russell, Esquire, who was assigned the affirmative of the question, and of Joseph A. Hurley, Esquire, Deputy Attorney General, who had the negative in accordance with an earlier opinion of the Attorney General on the question.

## I.

The Statute involved, 15 Del.C. § 4309, was first enacted in 1969 and provides:

"§ 4309. Governor and Lieutenant Governor; joint election

"The Governor and Lieutenant Governor shall be of the same political party and elected jointly at the same time on the same ballot in such manner that a single vote shall be cast for both offices."

The controlling provision of the Delaware Constitution is Article 3, Section 19, which provides in pertinent part:

"Section 19. A Lieutenant-Governor shall be chosen at the same time, in the same manner, for the same term, and subject to the same provisions as the Governor; he shall possess the same qualifications of elibigility for office as the Governor; he shall be President of the Senate, but shall have no vote unless the Senate be equally divided."

## II.

We are of the opinion that 15 Del.C. § 4309 is unconstitutional because it purports to add to the constitutional qualifications for the office of Lieutenant Governor, as specified in Del.Const., Art. 3, § 19, the statutory qualification that he be of the same political party as the Governor.

## III.

▆ It has long been settled that where the Constitution creates an office and pre-
scribes the qualifications that the incumbent must possess, the Legislature lacks the power to add to those qualifications by statute.

In Buckingham v. State ex rel. Killoran, 3 Terry 405, 35 A.2d 903 (1944), this Court stated:

"* * * It is the general law that where a constitution creates an office and prescribes the qualifications that the incumbent must possess, that the legislature has no power to add to these qualifications. 1 Cooley's Constitutional Limitation, 8th Ed., 140; Meecham on Public Offices, Secs. 65 and 98; Throop on Public Offices, Sec. 73; Annotations, 47 A.L.R. 481 and 97 Am.Dec. 264.

\* \* \* \* \* \*

"We are convinced from all the authorities that the Legislative branch of government has no authority to add further qualifications in connection with a constitutional * * * officer where the qualifications are provided by the Constitution. * * *."

The question before us is controlled by the rule of the *Buckingham* case. See also Abrahams v. Superior Court, Del.Supr., 11 Terry 394, 131 A.2d 662 (1957); Opinion of the Justices, Del.Supr., 245 A.2d 172, 174 (1968).

Proponents of 15 Del.C. § 4309 may point to the word "same" used repeatedly in Del.Const., Art. 3, § 19 with reference to the time, manner, term, provisions, and qualifications for election to the offices of Lieutenant Governor and Governor. The constitutional problem confronting § 4309 relates to the word "qualifications". The constitutional qualifications for the office of Governor have to do with age, citizenship, and residence only. Del.Const. Art. 3, § 6.[2] No constitutional qualification re-

---

2. Del.Const., Art. 3, § 6 provides:
   "Section 6. The Governor shall be at least thirty years of age, and have been a citizen and inhabitant of the United States twelve years next before the day of his election, and the last six years of that term an inhabitant of this State, unless he shall have been absent on public business of the United States or of this State."

lates to political party. The "same" qualifications for the office of Lieutenant Governor, therefore, must be deemed to relate solely to the age, citizenship, and residence qualifications set forth in Art. 3, § 6 for the office of Governor.

Proponents of 15 Del.C. § 4309 may also point to the 1897 Constitutional Debates for support of the view that the framers intended the Lieutenant Governor to be of the same political party as the Governor so as to assure continuity of the Governor's policies and the wishes of the electorate in the event of the Governor's resignation, incapacity, or death. There is, indeed, a quite troublesome statement by Judge Spruance in the Debates along these lines.[3] The difficulty with the argument, however, is that we can find nothing in the Constitution itself to fulfill the intent thus expressed by Judge Spruance. Awareness of the problem is obvious in the Debates. It would have been easy for the Convention to have made sameness of political party an express qualification for the office of Lieutenant Governor while enumerating the other qualifications of the office. Nevertheless, the Constitution is silent on the matter.

■ We are not confronted here with a matter of interpretation or construction of Del.Const., Art. 3, § 19 in which the Debates may be used as a persuasive aid in determining the intent of the Convention; rather, we have in § 19 clear and unequivocal language; and in such situation there is no room for judicial interpretation, construction, or search for intent.

Moreover, in this connection, it is noteworthy that in the 75 years since our present Constitution was adopted, there have been three elections in which the Lieutenant Governors were of different political parties than the Governors.[4] The fact that seven decades and three such elections were permitted to elapse, before the initial attempt in 1969 was made by § 4309 to implement such purported intent, militates against the acceptability of the concept of identity of political party as the actual intent of the Convention.[5]

3. At Volume 1, 1897 Constitutional Debates, pp. 299–300, the following appears:

"* * * When the people of the State elect a Governor, they not only decree it to be their wish that the Governor whom they choose shall occupy the Executive office for the four years, but also that the policy which he represents shall be the policy of the Government for that four years, and that whatever may be his party, his party shall be in power for four years, having the Executive power of the state. * *. As it is now, of course, there is no assurance in case of the death of the Governor that that policy would be continued. In fact, in the last two cases of the death of the Governor, the result has been an entire revolution of the Executive power and it has devolved upon a man who was of a party whom the people had just resolved they did not desire to trust with that power. "ANDREW L. JOHNSON: (Interrupting) A case in which Providence overruled. "WILLIAM C. SPRUANCE: Providence seemed to be somewhat wrong in its counsels at that time—I submit that we are prepared to judge of that question dispassionately after this lapse of time, and I think we all agree that it would not be desirable, and I am sure that my Democratic friends would think it would not be desirable if they had gone out and their opponents had come in under such circumstances. "But sitting as we are, we are not to judge upon particular cases, but upon principles, and for the good of the whole State and the future policy of the Government in that regard. It is desirable that that thing should not happen again, so far as we can prevent it."

4. 1913–1917—Governor Charles R. Miller, Republican Lieutenant Governor Colin Ferguson, Democrat 1941–1945—Governor Walter Bacon, Republican Lieutenant Governor Isaac MacCollum, Democrat 1945–1949—Governor Walter Bacon, Republican Lieutenant Governor Elbert N. Carvel, Democrat

5. The conclusion we reach is consonant with the general practice in other States, in

■ We are duly aware of the cardinal rule that there is a presumption in favor of the constitutionality of a legislative enactment. We are convinced, however, that 15 Del.C. § 4309 may not survive in the light of Del.Const., Art. 3, § 19. A constitutional change will be needed, in our opinion, to accomplish that which is attempted by 15 Del.C. § 4309.

Accordingly, our unanimous response to your question is in the negative.

Respectfully submitted,

DANIEL F. WOLCOTT
Chief Justice

JAMES B. CAREY
D. L. HERRMANN
Associate Justices.

1897 and today. As late as 1966, there were only six States which required joint balloting for Governor and Lieutenant Governor. Since 1966, the number has grown to fourteen. (Data furnished by The Council on State Governments, Lexington, Kentucky.)