THE STATE OF DELAWARE, upon the relation of Frank P. Walker, v. WILLIAM WATSON HARRINGTON, Chancellor of the State of Delaware, and CHARLES L. TERRY, JR., Associate Judge of the State of Delaware, Resident in Kent County, constituting the Superior Court of the State of Delaware, in and for Kent County, pursuant to Section 6 of Article V of the Constitution of the State

of Delaware, and as such The Board of Canvass in and for Kent County, State of Delaware.

*(February 22, 1943.)*

LAYTON, C. J., RICHARDS, RODNEY and SPEAKMAN, J. J., sitting.

*William J. Storey* and *P. Warren Green* for the relator.

*Howard E. Lynch, Jr., Josiah O. Wolcott, Jr.,* and *Stewart Lynch,* amici curiae.

## Supreme Court, No. 1, January Term, 1942.

¹ "Section 3. No person who shall receive or accept, or offer to receive or accept, or shall pay, transfer, or deliver, or offer or promise to pay, transfer or deliver, or shall contribute, or offer or promise to contribute to another, to be paid or used, any money or other valuable thing as a compensation, inducement or reward for the registering or abstaining from registering of any one qualified to register, or for the giving or withholding, or in any manner influencing the giving or withholding, a vote at any general or special or municipal election in this State, shall vote at such election; and upon challenge for any of said causes the person so challenged before the officers authorized for that purpose shall receive his vote, shall swear or affirm before such officers that he has not received or accepted, or offered to receive or accept, or paid, transferred or delivered, or offered or promised to pay, transfer or deliver, or contributed, or offered or promised to contribute to another, to be paid or used, any money or other valuable thing as a compensation, inducement or reward for the registering or abstaining from registering of any one qualified to register, or for the giving or withholding, or in any manner influencing the giving or withholding, a vote at such election.

"Such oath or affirmation shall be conclusive evidence to the election officers of the truth of such oath or affirmation; but if any such oath or affirmation shall be false, the person making the same shall be guilty of perjury, and no conviction thereof shall bar any prosecution under Section 8 of this Article.

"Section 4. The General Assembly shall enact uniform laws for the registration of voters in this State entitled to vote under this Article, which registration shall be conclusive evidence to the election officers of the right of every person so registered to vote at any General Election while his or her name shall remain on the list of registered voters, and who is not at the time disqualified under the provisions of Section 3 of this Article; and no person shall vote at such General Election

SPEAKMAN, J., delivering the opinion of the Court:

This case was before the Court at a prior stage on suggestions by the amici curiae that the Court lacked jurisdiction to review the acts of the Superior Court for Kent County, sitting as a Board of Canvass for such county. It was the opinion of the Court that it had the jurisdiction to hear and dispose of the relator's petition on its merits. See *State v. Harrington,* .3 *Terry* (42 *Del.*) 14, 27 A. 2d 67. Reference to the statement of facts preceding the opinion will disclose the nature of the proceeding. It is not deemed necessary to restate or elaborate in detail what is there stated.

The question now before the Court is the constitutionality of the Act of 1898, as amended, and now found in Article 4, Chapter 60, Revised Code of 1935, enabling

whose name does not at that time appear in said list of registered voters. * * *

"Section 5. Electors shall in all cases, except treason, felony, or breach of the peace, be privileged from arrest, during their attendance at elections, and in going to and returning from them.

"Section 6. The presiding election officer of each hundred or election district, on the day next after the general election, shall deliver one of the certificates of the election, made and certified as required by law, together with the ballot box or ballot boxes, containing the ballots, and other papers required by law to be placed therein, to the Prothonotary of the Superior Court of the county, who shall at twelve o'clock noon on the second day after the election present the same to the said court, and the election officer or officers having charge of any other certificate or certificates of the election shall at the same time present the same to the said court, and the said court shall at the same time convene for the performance of the duties hereby imposed upon it; and thereupon the said court, with the aid of such of its officers and such sworn assistance as it shall appoint, shall publicly ascertain the state of the election throughout the county, by calculating the aggregate amount of all the votes for each office that shall be given in all the hundreds and election districts of the county for every person voted for for such office.

"In case the certificates of election of any hundred or election district shall not be produced, or in case the certificates produced do not agree, or in case of complaint under oath of fraud or mistake in any such certificate, or in case fraud or mistake is apparent on the face of any such certificate, the court shall have power to issue summary process against the election officers or any other persons to bring them forthwith into court with the election papers in their possession or control, and to open the ballot boxes and take therefrom any paper con-

qualified voters of this State, in the military or naval service of this State or of the United States, to exercise the right of suffrage. By its provisions those in such service and absent on the day of election from the hundred, election district or ward of their residence, are authorized to cast their votes at their place of encampment. For convenience, this Act will be hereinafter referred to as the "Soldiers' Vote Act."

In 1923 another Act was passed which was much broader in scope. Art. 5, Chap. 60, Revised Code of 1935. It provided for the casting of ballots by mail by persons unable to be personally present at the polling places in their districts on election day.

The constitutionality of the Act of 1923 was considered by the Court of General Sessions in the case of *State v.*

---

tained therein, and to make a recount of the ballots contained therein, and to correct any fraud or mistake in any certificate or paper relating to such election.

"The said court shall have all other the jurisdiction and powers now vested by law in the boards of canvass, and such other powers as shall be provided by law.

"After the state of the election shall have been ascertained as aforesaid, the said court shall make certificates thereof, under the seal of said court in the form required by law, and transmit, deliver and lodge the same as required by this Constitution or by law, and deliver the ballot boxes to the sheriff of the county, to be by him kept and delivered as required by law. * * *

"Section 7. Every person who either in or out of the State shall receive or accept, or offer to receive or accept, or shall pay, transfer or deliver, or offer or promise to pay, transfer or deliver, or shall contribute, or offer or promise to contribute, to another to be paid or used, any money or other valuable thing as a compensation, inducement or reward for the giving or withholding, or in any manner influencing the giving or withholding, a vote at any general, special, or municipal election in this State. or at any primary election, convention or meeting held for the purpose of nominating any candidate or candidates to be voted for at such general, special or municipal election; or who either in or out of the State shall make or become directly or indirectly a party to any bet or wager depending upon the result of any such general, special, municipal or primary election or convention or meeting, or upon a vote thereat by any person; or who either in or out of the State shall, by the use or promise of money or other valuable thing, or otherwise, cause or attempt to cause any officer of election or registration officer to violate his official duty; or who either in or out of the

*Lyons,* 1 *Terry* (40 *Del.*) 77, 5 A. 2d 495, 502. In that case the defendant contended that the Act was unconstitutional in that it was in conflict with the provisions of Article V of the Constitution of 1897. The Court considered two matters which seemed to indicate the meaning of the constitutional provisions, and which were determinative of the question under consideration.

(a)  Absentee voting as considered in connection with the debates of the Delaware Constitutional Convention in 1897.

(b)  Absentee voting as affected by Article V, Sec. 3, concerning challenge of voters.

The Court said: "In the Constitutional debates there are many statements indicating the clear understanding that the casting of a ballot was to be effected by the personal presence of the voter at the polls. * * * From a very thorough study of the problem we are convinced that the Constitution as it exists at present contemplates and requires the personal attendance of the voter at the polls, and no power now exists in the Legislature to provide for absentee voting. We are led to this conclusion both from the express provisions of the Constitution and the plain inference drawn therefrom."

The correctness of the Court's conclusion in the Lyons case has not been challenged in the present case. Amici

State shall by the use or promise of money or other valuable thing influence or attempt to influence any person to be registered or abstain from being registered; or who, being an officer of election or registration officer, shall knowingly and wilfully violate his official duty; or who shall by force, threat, menace or intimidation, prevent or hinder, or attempt to prevent or hinder, any person qualified for registration from being registered or any person qualified to vote from voting according to his choice at any such general, special or municipal election, shall be deemed guilty of a misdemeanor. * * * Every person charged with the commission while out of the State of any of the offenses enumerated in this section, and by this section made punishable, whether committed in or out of the State, may be prosecuted under Section 8 of this Article in any county in which he shall be arrested on such charge. * * *"

curiae suggest that the Lyons case "made no ruling that the Constitution requires the voter when offering his vote, to stand on the soil embraced within the boundary lines of the district," and that "the question to be determined here is whether the Constitution requires that the polling places for the reception of ballots be located within the geographical and territorial confines of the State of Delaware."

In the Lyons case the Court gave much consideration to Section 2 of Article V of the Constitution, and was of the opinion that the critical words and those most requiring consideration are "in which he may offer to vote" as indicating the action of the elector, and "shall be entitled to vote at such election in the hundred or election district of which he shall at the time be a resident, and in which he shall be registered," as indicating the place where the election is to be held. We do not disagree with anything the Court said concerning the language of this Section, yet here, as there, the question before the Court can only be determined by a consideration of all the material and pertinent provisions of the Constitution.

There the Court referred to the fact that Section 3 of Article V of the Constitution "has been explicit in its attempt to frustrate bribery," and was of the opinion that no voter could meet the challenge for bribery without his personal presence at the polls. The amici curiae suggest that under the "Soldiers' Vote Act" the voter is personally present at the polls and can be there challenged. But it must be observed, that under the "Soldiers' Vote Act," if he is duly registered, he may appear at any one of a number of places and there offer to vote. The Constitution, by Section 4 of Article V, has prescribed for uniform laws for registration of voters for the purpose of determining that prospective voters duly possess the necessary and prescribed qualifications. This section provides that all questions of the qualifications of voters should be determined before election day, and on that day, beyond the fact of the identity of the per-

sons, the sole ground of challenge should be the violation of said Section 3 of Article V.

Now if polling places for the several hundreds or election districts can be located outside of the territorial limits of such hundred and election districts in the manner provided in the "Soldiers' Vote Act," then whenever any of the qualified voters of this State shall be engaged in the military or naval service of this State, and, as such, absent from the election district of their residence on the days appointed for the holding of the general elections in this State, there would be (a) polling places for each hundred or election district of the State located within its territorial limits, and (b) polling places, not for the respective hundreds or election districts, but for the entire State, located at each place of encampment. At the polling place in each hundred or election district, there would be the registration books containing the names of all the electors qualified to vote thereat, as required by the Constitution and the laws passed pursuant thereto, and at the polling place in each place of encampment there would be composite lists of the names of citizens in such military and naval service who have been registered as qualified voters for the succeeding general election of each county, and also complete registration lists of each county, as provided by Section 130 of the "Soldiers' Vote Act," Rev. Code 1935, § 1939.

From the above, it is apparent that a person in such military or naval service, if duly registered, has the unqualified right under the Constitution to appear and offer to vote at the polling place within the territorial limits of the hundred or election district in which he is registered. Under the revisions of the Soldiers' Vote Act, if absent on the day of the election from the hundred, election district or ward of his residence, he may appear and offer to vote, if within two miles thereof, at the polling place at the place of his encampment, or if detached or absent from his company on duty

which will not permit him to return to his company's encampment, he may vote at such polls as may be most convenient to him opened at any other encampment. Sec. 118 of Chap. 60. On the other hand, if he is so disposed and is physically able, he may appear and offer to vote at all of said places and his ballot could not be rejected at any of said places, unless he was challenged for bribery; and if so challenged, and he met the challenge by taking the Constitutional oath, his ballot could not then be rejected by the election officers.

It is due to those in service who voted at the election in question at their place of encampment, to add that there is no thought or suggestion that they knowingly violated any of the provisions of our Constitution or laws in so voting.

Regardless of all that might be said of the right of every elector of a district to be present at the polling place in his district to witness the voting of all the qualified voters of his district desiring to vote, and to cause to be challenged any person suspected of bribery or impersonation, we think the right of challenge would be unduly restricted if an elector is authorized to vote, as occasion might permit, at any one of a number of polling places, without notice to those who possessed the right or authority to challenge or to cause him to be challenged for bribery. However, there is one matter that we consider of importance. When an elector is challenged for any cause re'ating to bribery, the election officers are prohibited by the Constitution from receiving his vote until he shall swear or affirm before the election officers that he has not "received or accepted, or offered to receive or accept, or paid, transferred or delivered, or offered or promised to pay,.transfer or deliver, or contributed, or offered or promised to contribute to another, to be paid or used, any money or other valuable thing as the compensation, inducement or reward for the registering or abstaining from registering of any one qualified to register, or for the giving or

withholding, or in any manner influencing the giving or withholding, a vote at such election." The Constitution provides that "if any such oath or affirmation shall be false, the person making the same shall be guilty of perjury." Art. V, Sec. 3.

The question naturally arises as to whether there could be a prosecution for perjury, if the oath or affirmation should be false and was administered at a polling place located outside of the territorial limits of the State. There can be no doubt of the general proposition that the provisions of the Constitution and laws of a state have no binding effect beyond its territorial limits. As an exception to this proposition it may be that a State can provide by its Constitution that if any of the citizens should violate any of the provisions thereof when outside of the State, he would be answerable to its criminal courts when he returned to the State. It is quite evident that the framers of the Constitution intended that the provisions in the Constitution relating to bribery should have extra-territorial effect. This clearly appears in Section 7 of Article V. There provision is made for the prosecution of every person who either in or out of the State violates any of such provisions. On the other hand, it nowhere appears in the Constitution, either directly or by inference, that it was intended that any qualified elector of this State, who outside of this State swears or affirms falsely, when challenged for bribery when offering to vote at a polling place located outside of this State, can be tried in this State for perjury. If this is not sufficient to imply that the drafters of the Constitution intended that electors, when offering to vote must personally appear at polling places within the limits of the State, for their respective hundreds or districts, then all doubt can be removed by reference to Section 5, of Article V of the Constitution, wherein it is provided that "Electors shall in all cases, except treason, felony, or breach of the peace, be privileged from arrest, during their

attendance at elections, and in going to and returning from them."

This provision is directly repugnant to the idea that polling places for hundreds or election districts in this State, can be established at points without the State, for it cannot be assumed that language such as that contained in this Section was intended to have, or could have, extraterritorial effect.

█ Finally, the provisions of the Soldiers' Vote Act and Section 6, Article V of the Constitution are in another respect irreconcilably antagonistic.

The provisions of this section are explicit as to the duties of the election officers of the hundreds and election districts of the county in regard to the disposition of the certificates of the result of the election, the ballot boxes and other papers of their respective districts. The provisions of the section are equally explicit as to the duties of the Court in regard to the use of such certificates, ballot boxes and other papers upon the delivery of them to it. Amici Curiae suggest that this section vests in the Court, sitting as a Board of Canvass, whatever jurisdiction and powers the former statutory Boards of Canvass had—and in addition—"such other powers as shall be provided by law." They do not rely on any provision of law relating to the jurisdiction or powers of the former Boards of Canvass, but they say that by the use of the language in this Section "such other powers as shall be provided by law" the Constitution gives a wide and unlimited authority to the legislature to grant powers to the Court, sitting as a Board of Canvass. The phrase, "such other powers as shall be provided by law" is broad and sweeping, but at most it means nothing more than that the legislature was given the authority to grant such additional powers as might be found necessary or desirable for the Court, sitting as a Board of Canvass, to possess to aid it in the performance of its constitutional duty in ascertaining the result of the

elections. We do not think that by the use of the phrase, or by the use of any other language in the Constitution, it was the intention of its framers that the legislature should have the power of changing or superseding the express mandate of the Constitution pertaining to the source to which the Court, sitting as a Board of Canvass, could look for the purpose of ascertaining the state of an election.

By the language of said Section 6, the Court, sitting as a Board of Canvass, is fully and explicitly directed to proceed in a particular manner in ascertaining the state of the election throughout the county, and in the language of the section: "After the state of the election shall have been ascertained as aforesaid, the said court shall make certificates thereof." "Ascertained as aforesaid" means in the manner theretofore prescribed in the section. The meaning cannot be enlarged by legislative action.

We think it was clearly the intention of the framers of the Constitution to put the "duty" of the Court, so sitting, as distinguished from the "powers" necessary to be exercised in the performance of such duty, beyond the reach of legislative control.

Regardless of the full and explicit directions in the Constitution defining the procedure to be followed in ascertaining the state of the election in the respective counties of the State, the legislature, by the passage of the "Soldiers' Vote Act," provided for a departure from such procedure with respect to those voting at the places of encampment.

Under the provisions of the Act, at each of such places the ballots, certificate of the number of ballots returned, and the poll lists are to be placed in three pouches, one for each county, which are then to be locked and delivered to two messengers who had theretofore been appointed by the Governor. These pouches are to be delivered to the Prothonotary of the county to which they belong, who, as soon as possible, is to deliver them to the Superior Court of the

county, sitting as a Board of Canvass. The said Court, so sitting, then "shall open the ballots and count them, as other election returns made from voting precincts [hundreds or election districts] within the State." §§ 1935, 1936 of the Revised Code of 1935.

As the election officers are chosen by the voters from the electors at the places of encampment, when such places of encampment are without the State, the Constitutional powers of the Court, so sitting, "to issue summary process against the election officers * * * to bring them forthwith into court with the election papers in their possession or control" Art. V, Sec. 6, clearly indicates that polling places cannot be established outside of the State, as the process of the Court could in no event reach beyond the limits of the State and bring before the Court the election officers in charge of the election, and the election papers in their possession or control.

We are entirely familiar with the rule that makes it our duty to resolve all doubts and uncertainties in favor of the constitutionality of a law, but here it has no application. In our opinion, both from the letter and the spirit of the Constitution, there is no reasonable ground to doubt but that it requires the polling places for the reception of ballots at general elections held in this State to be located within the territorial limits of the State.

An appropriate order will be signed in accordance with this opinion.