FRANK P. WALKER v. ELIJAH S. HUGHES.

*(February* 19, 1944.)

LAYTON, C. J., RODNEY and TERRY, J. J., sitting.

*William J. Storey* and *P. Warren Green* for the plaintiff.

*Stewart Lynch* and *Howard E. Lynch* for the defendant.

Superior Court for New Castle County, May Term, 1943.

LAYTON, Chief Justice:

· The plaintiff sued in assumpsit to recover from the defendant the amount of salary incident to the office of County Comptroller for Kent County which had been paid to and accepted by the defendant during the time of his alleged wrongful possession of the office.

The special count of the declaration alleged that between January 7, 1941, and April 1, 1943, the Levy Court of Kent County, believing that the defendant had been duly elected to the office of County Comptroller for Kent County at the general election held on November 5, 1940, for the term of four years beginning on January 7, 1941, and was entitled to the salary appertaining to the office, paid to the defendant from the monies of Kent County the total sum of $4,397.63 as the salary due to the duly elected holder of the office for the period between January 7, 1941, and March 16, 1943, which amount the defendant received and accepted as the salary appertaining to the office for the stated period; that thereafter the Superior Court of Kent County, consti-

tuting the Board of Canvass for the election, as directed by order of the Supreme Court, on March 11, 1943, recanvassed the votes given at the election for the office of County Comptroller and ascertained that the plaintiff has been duly elected to the office for the statutory term beginning on January 7, 1941, and issued to him a certificate of election, at the same time rescinding the certificate of election theretofore issued to the defendant; and that, thereupon, the plaintiff duly qualified, entered into and now occupies the office; wherefore, the defendant became liable to pay to the plaintiff and in consideration thereof promised to pay to him the sum of $4,397.63 received as the salary of the office.

The defendant pleaded specially averring that the defendant had been duly elected County Comptroller for Kent County at the general election held in November 1936 for the statutory term, and a certificate of election had been issued to him pursuant to which he qualified for the office by taking the required oath and giving bond; that on the first Tuesday in January 1937, he entered upon and duly performed all the duties and obligations pertaining to the office up to and including March 16, 1943; that no other person qualified for the office, nor performed its duties and obligations during the stated period; that on March 11, 1943, the Superior Court for Kent County, constituting the Board of Canvass for the general election held in November, 1940, issued a certificate of election certifying that the plaintiff had been elected to the office of County Comptroller, and thereafter, on March 16, 1943, the plaintiff for the first time sought to and did qualify for the office by taking the required oath and giving bond, and it was not until then that the plaintiff entered upon or sought to perform any of the duties and obligations of the office.

The plaintiff demurred generally.

The root of the controversy was the constitutionality of *Chapter* 39, *Volume* 21, *Delaware Laws*, approved June 25,

1898. The provisions of this act were incorporated in the *Code* of 1935 in *Article* 4 of *Chapter* 60, and the act is generally referred to as the Soldiers' Vote Act.

In *State v. Lyons et al.,* 1 *Terry* 77, 5 A. 2d 495, the Court of General Sessions for New Castle County had before it the question of the constitutionality of *Chapter* 103, *Volume* 33, *Delaware Laws,* appearing in the *Code* in *Article* 5 of *Chapter* 60, and known as the Absentee Voters Act. Lyons and others were indicted for conspiring to abet fraud in connection with the casting of votes under the provisions of that act at the general election held in New Castle County in November, 1938. The defendants moved to quash the indictment on the ground, inter alia, that the act was unconstitutional for the reason that the legislature was without power to enact a statute authorizing the casting of ballots by persons who were not personally present at the polling places on election day. The debates in the Constitutional Convention of 1897 with respect to the Article V of the Constitution headed "Elections," were carefully examined, and from the debates and other provisions of the Article providing for the challenging of electors offering to vote it was held that no power existed in the Legislature to provide for absentee voting. This decision was rendered on April 12, 1939, and at the time of the general election in 1940 constituted the whole of the decisional law in this State on the general question of absentee voting. At that election certain ballots of electors absent from their polling places in Kent County by reason of service in the armed forces of the United States were forwarded under the provisions of the Soldiers' Vote Act, and were before the Superior Court for Kent County, the constitutional Board of Canvass for the election in that County. Against the plaintiff's objection, and no doubt on the theory that the Court, sitting as a Board of Canvass, was without power to pass upon the constitutionality of the Soldiers' Vote Act, which was not directly before the Court in the Lyons case, these votes were counted, and counting them, it was

ascertained that the defendant had received the highest number of votes cast for the office of County Comptroller for Kent County. Otherwise, the plaintiff would have received the highest number of votes cast for the office. A certificate of election was thereupon issued to the defendant.

Thereafter the plaintiff invoked the original jurisdiction of the Supreme Court to direct by mandamus the Superior Court for Kent County constituting the Board of Canvass for the election to re-canvass the vote cast at the election, especially for the office of County Comptroller; and in that action it was held that the Soldiers' Vote Act was unconstitutional and void, and an appropriate mandate was issued to the Board of Canvass. *State ex rel. Walker v. Harrington et al.*, 3 *Terry* (42 *Del.*) 14, 30 A. 2d 688. Accordingly the Board of Canvass re-canvassed the vote cast at the general election held in November, 1940, for the office of County Comptroller and the result was, as alleged both in the declaration and plea, an ascertainment that the plaintiff, and not the defendant, had received the highest number of votes cast for the office. A certificate of election was thereupon issued to the plaintiff, and an order entered rescinding the certificate of election theretofore issued to the defendant. The plaintiff qualified, and assumed the duties of the office.

The not unusual case is presented in which one whose right to a public office has been judicially determined seeks to recover from another in possession under color of title the emoluments of the office.

The great weight of authority supports the rule that the rightful incumbent of a public office may recover from an officer de facto the salary received by the latter during the time of his wrongful tenure, even though he entered into the office in good faith and under color of title. The reasons advanced in support of the rule are quite generally regarded as unanswerable. To prevent embarrassment of the public service, disbursing officers, charged with the duty of

paying official salaries, may rely on the apparent title of an officer de facto, and treat him as an officer de jure without further inquiry; and the payment of the salary to a de facto public officer in possession is a good defense to an action brought by the de jure officer to recover from the public the same salary after he has established his right to the office. But as between the de jure officer and the de facto officer, the emoluments of a public office are incident to the title and not to the possession even though colorable. A de facto officer is held bound to know the validity of his title, and he takes the salary of the office at his peril, as does one who, with a defective title, enters into possession of land and takes to his use the rents and profits. He must, therefore, account to the de jure officer for whatever amount of salary paid to him during the period of his wrongful possession. Resulting hardship to the de facto officer is obvious in many cases; but the rule is one of manifest soundness and utility in support of a wise public policy designed to discourage or prevent usurpation or wrongful retention of public offices. The need for establishing general regulations for the government of society overbalances the individual hardship oftentimes resulting to the de facto officer. Extended citation and discussion of the cases is not necessary. The general rule and the reasons therefor are stated in 43 *Am. Jur.* 167; 46 *C. J.* 1029; 8 *A. & E. Ency. Law,* 2d *Ed.* 808; *Throop, Public Officers,* § 522; and many of the cases will be found in annotations in 93 *A. L. R.* 273; *L. R. A.* 1918 F, 587; 140 *Am. St. Rep.* 194; 32 *L. R. A.* (*N. S.*) 949; 12 *Ann. Cas.* 894.

Inferentially, at least, the rule has been recognized in this State by the former Court of Errors and Appeals, and by this Court. See *Lee v. Mayor & Council of Wilmington,* 1 *Marv.* 65, 40 A. 663; *State ex rel. Jones et al. v. Wise,* 9 *W. W. Harr.* (39 *Del.*) 409, 200 A. 418.

*Stuhr v. Curran,* 44 *N. J. L.* 181, 43 *Am. Rep.* 353, is one of the few cases which holds to the contrary. There the

decision was by a sharply divided Court. The majority opinion seemed to proceed on the theory that the right to the emoluments of a public office arises, not from the title to the office, but from the actual rendition of service for which the emoluments were designed as compensatory. The decision has frequently been characterized as unconformable. See *Kreitz v. Behrensmeyer,* 149 *Ill.* 496, 36 *N. E.* 983, 24 *L. R. A.* 59; *Drach v. Leckenby,* 64 *Colo.* 546, 172 P. 424, *L. R. A.* 1918F, 576; *Booker v. Donohoe,* 95 *Va.* 359, 28 *S. E.* 584; *Sandoval v. Albright,* 14 *N. M.* 345, 93 P. 717. And, on the contrary, the reasoning of Chief Justice Beasley, in his dissenting opinion, has been widely cited and generally accepted as convincing.

The defense offered by the plea is, that during the period from January 7, 1941, to March 16, 1943, when the plaintiff assumed the office, the defendant was an officer de jure under constitutional and statutory authority, and not merely a de facto officer.

*Section* 5 of *Article XV* of the *Constitution* provides that all public officers shall hold their respective offices until their successors shall be duly qualified, except as otherwise provided; and the statute creating the office of County Comptroller for Kent County created a term of four years, or until a successor shall be duly qualified. *Rev. Code,* 1935, *Ch.* 46, *Sec.* 1 (section 1476).

The defendant, in his plea, tacitly admits the allegations of the declaration with respect to the general election held on November 5, 1940; but he seeks to avoid the force and effect of the averments by alleging that he was elected to the office at the general election held in November, 1936, and that from the time of his qualification therefor in January following the election until March 16, 1943, when the plaintiff first qualified, he alone had qualified for the office and none other than he had assumed and performed its duties and obligations. It is argued that during this period the defendant,

under the Constitution and statute, held the office, not merely in fact, but as of right, and was entitled to take and hold the salary pertaining to the office during the stated period without liability to account therefor to the plaintiff, his successor.

The contention is patently invalid. Holding over provisions in constitutions and statutes are not uncommon; and apart from any constitutional or statutory regulation it seems to be the general rule of law that an incumbent of an elective office will hold over after the conclusion of his term until the election and qualification of a successor. 43 *Am. Jur.* 20.

The purpose of a holding over provision is to prevent a possible vacancy or interregnum in a public office where there is no properly qualified successor at the expiration of the usual statutory term, so that the public business will not be interrupted or subjected to doubt or dispute. *State ex rel. Southerland v. Caulk,* 3 *W. W. Harr.* (33 *Del.*) 344, 138 A. 354. An elective officer holding over after the expiration of his term may or may not be accurately described as an officer de jure dependent on the circumstances. In a proper case he holds de jure in the full sense of the term and is entitled to the emoluments of the office as of right, as, for example, where there has been no election of a successor, or where a duly elected successor is disqualified to hold the office. But it will not be readily agreed that an elective officer retaining possession of the office after the conclusion of his term is necessarily and in all circumstances an officer de jure under the usual holding over provision even as against a duly elected successor possessing all of the qualifications for the office whose right to the immediate possession of the office is withheld through no default or neglect on his part. So to hold would extend the holding over provision far beyond its purpose; would tend to promote, not discourage, wrongful retention of public office; and would effectively deny the very principle on which is based the liability of a de facto officer

to account to the officer de jure for the emoluments of the office received by the former during the period of his wrongful occupancy.

The certificate of election first issued to the defendant following the canvass of the vote in November, 1940, conferred upon the defendant a prima facie title to the office, and justified the disbursing officers of the County in paying to him the stated salary of the office. But the certificate of election was but a muniment of title. 42 *Am. Jur.* 948. It was evidence of the result of the canvass, but did not determine the result of the election conclusively beyond the possibility of revision or reversal. The plaintiff's right or title to the office was in esse as a result of the election as properly ascertained. His right to possess the office accrued on the first Tuesday in January, 1941, upon qualification therefor. At that time, prima facie, the defendant had title. The plaintiff was not obliged to make a formal but utterly vain offer to qualify in order to establish and maintain his right to the office which, however long postponed in actual enjoyment, existed and persisted, with the result that the defendant, from January 7, 1941, was never in possession of the office as of legal right. 42 *Am. Jur.* 969; 43 *Am. Jur.* 21; *People v. Potter*, 63 *Cal.* 127; *People ex rel. Benoît v. Miller*, 16 *Mich.* 56; *Id.*, 24 *Mich.* 458, 9 *Am. Rep.* 131.

Moreover, it is clear enough that the defendant, on and after January 7, 1941, did not rest his right to continue in possession of the office on the holding over provisions of the Constitution and statute. The result of the election held in November, 1940, was at first determined in the defendant's favor. By necessary implication he had been a candidate for re-election to the office. A certificate of election was issued to him by the Board of Canvass. He accepted from the Levy Court of Kent County from January 7, 1941 to March 16, 1943 certain money as the salary due to the duly elected County Comptroller for the County. A

public officer, who at the end of his term of office is again chosen for the office, must generally qualify for the new term by giving bond and taking the oath of office. 42 *Am. Jur.* 974; and the law presumes that one who is in actual possession of an office has duly qualified. 46 *C. J.* 960. It sufficiently appears that on January 7, 1941, the defendant's claim of right to occupy the office was based on a new title, a new term and a new qualification, and not on a prolongation of a former term under a title resulting from the election held in November, 1936. The defendant's acts in seeking re-election, accepting a certificate of election in November, 1940, and qualifying anew pursuant to that presumptive evidence of title, constituted an effective abandonment of any claim of right to hold over under the constitution and statute. *Handy et al. v. Hopkins et al.,* 59 *Md.* 157; *Ex parte Gray, Bailey Eq.* 77, 8 *S. C. Eq.* 77, 22 *S. C. Reprint* 40; 46 *C. J.* 970; 23 *A. & E. Ency. Law,* 2d *Ed.,* 417; *Throop, Public Officers,* § 332.

In one aspect the defendant is in hard case. There is, of course, no question as to his good faith. At the same time he was aware of the plaintiff's contention with respect to the validity of the votes received from electors in the armed services; and he must be held to the knowledge that the final determination of the result of the election might be adverse to him. Hardship to the plaintiff is likewise manifest, if he should be deprived of the emoluments of the term of office to which he was duly elected.

The plea offers no defense to the action; and the demurrer is, accordingly, sustained.