ALEXANDER R. ABRAHAMS, Petitioner, v. THE SUPERIOR COURT OF THE STATE OF DELAWARE, IN AND FOR NEW CASTLE COUNTY, SITTING AS THE BOARD OF CANVASS, CONSISTING OF CALEB R. LAYTON, III, RESIDENT ASSOCIATE JUDGE FOR NEW CASTLE COUNTY, and FRANK L. SPEAKMAN, JUDGE AD LITEM BY APPOINTMENT OF THE GOVERNOR, Respondents, EUGENE LAMMOT and JOHN E. BABIARZ, Additional Respondents.

(*May* 7, 1957.)

SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, J. J., sitting.

*Clarence W. Taylor* (of Hastings, Lynch and Taylor) for Petitioner.

*James L. Latchum* (of Berl, Potter and Anderson) for additional Respondents.

Supreme Court of the State of Delaware, No. 45, 1956.

SOUTHERLAND, C. J.:

Prior to the amendments of 1955 hereafter discussed, the City Charter of the City of Wilmington, as amended, required the municipal election for the Mayor and the councilmen to be held on the first Saturday in June, 1953, and on the same day in every fourth year thereafter. See 17 *Del. L.* c. 207; 49 *Del. L.* c. 110. The vote was canvassed by the Department of Elections for New Castle County, to which the functions of the former Department of Elections for the City of Wilmington had been transferred. See 19 *Del. L.* c 727, § 25; 42 *Del. L.* c. 115; 15 *Del. C.* §§ 102, 103.

By a series of statutes passed in 1955, the General Assembly sought to effect certain changes in the time and in the manner of conducting the Wilmington city election.

By an act that became law June 28, 1955, amending the City Charter, the date of the city election is changed to the date of the General Election to be held on the Tuesday next after the first Monday in November, 1956, and on the same day in every fourth year thereafter. 50 *Del. L.* c. 391.

By an act that became law May 17, 1955, amending the provisions of the *Code* dealing with municipal elections, Title 15, c. 75, it is provided in part:

"§ 7521. From and after the passage of this Act, the registration, election and canvass of the vote cast at elections in the City of Wilmington for the Mayor, Council, and other officers of the City of Wilmington, shall in all respects be conducted in

conformity with the provisions governing general elections as provided under Title 15 of the *Delaware Code.*" 50 *Del. L.* c. 390.

By an act that became law on June 28, 1955, the provisions of 19 *Del. L.* c. 727, relating to the Department of Elections for the City of Wilmington and the canvass of the city election by that Department, are repealed. 50 *Del. L.* c. 392. The legislative intent of each of the two acts last referred to is declared to be to make applicable to the city election "all of the provisions of Title 15, *Delaware Code,* as may be applicable thereto."

The provisions of Title 15 with which we are here concerned relate to the canvass of the vote. They are found in § 5701 which provides:

"(a) The Superior Court shall convene in each county on the second day after the general election, at 12 o'clock noon, for the performance of the duties imposed upon it by Section 6 of Article V of the Constitution of this State and by this chapter. Thereupon the Court, with the aid of such of its officers and such sworn assistants as it shall appoint, shall publicly ascertain the state of the election throughout the county and in the respective hundreds and election districts, by calculating the aggregate amount of all the votes for each office that shall have been given in all the hundreds and election districts of the county for every person voted for for such office.

"(b) For the purposes of this chapter, the Superior Court shall consist in New Castle County of the President Judge and the Resident Associate Judge; in Kent County of the Chancellor and the Resident Associate Judge; and in Sussex County of the Resident Associate Judge and the remaining Associate Judge. For the purpose of this chapter, the Superior Court in each county, as so constituted, shall be a Board of Canvass for the respective counties of this State."

These statutory provisions are but a restatement of certain of the provisions of Art. V, Sec. 6 of our Constitution, *Del. C.*

*Ann.,* relating to the canvass by the Superior Court of the vote at general elections. The scope and effect of the constitutional provision are hereafter considered.

The Wilmington city election was accordingly held on November 6, 1956, on the same day as the general election. On the face of the returns, the Democratic candidates for the offices of Mayor and city councilmen were elected.

The Superior Court duly convened for the purpose of canvassing the vote cast at the city election, as well as the vote cast at the general election. While the canvass was in progress the Republican candidate for Mayor petitioned this Court for a writ of prohibition restraining the Superior Court from canvassing the vote at the city election, on the ground that so much of the acts of 1955, above referred to, as purported to require the Superior Court to canvass that vote is an attempt to enlarge the canvassing jurisdiction of the Superior Court fixed by Art. V, Sec. 6, and is unconstitutional.

An order was entered, declining to stay the canvass, but directing the certificate evidencing the result of the vote to be deposited with the Clerk of the Court, subject to the further order of the Court.

Art. V, Sec. 6 of the Constitution, relating to the canvass of the vote at the general election, provides in part as follows:

"Section 6. The presiding election officer of each hundred or election district, on the day next after the general election, shall deliver one of the certificates of the election, made and certified as required by law, together with the ballot box or ballot boxes, containing the ballots, and other papers required by law to be placed therein, to the Prothonotary of the Superior Court of the County, who shall at twelve o'clock noon on the second day after the election present the same to the said court, and the election officer or officers having charge of any other certificate or certificates of the election shall at the same time present the same to the said court, and the said court shall at

the same time convene for the performance of the duties hereby imposed upon it; and thereupon the said court, with the aid of such of its officers and such sworn assistants as it shall appoint, shall publicly ascertain the state of the election throughout the County, by calculating the aggregate amount of all the votes for each office that shall be given in all the hundreds and election districts of the county for every person voted for for such office.

* * * * * *

"The said court shall have all the other jurisdiction and powers now vested by law in the boards of canvass, and such other powers as shall be provided by law.

"After the state of the election shall have been ascertained as aforesaid, the said court shall make certificates thereof, under the seal of said court in the form required by law, and transmit, deliver and lodge the same as required by this Constitution or by law, and deliver the ballot boxes to the sheriff of the county, to be by him kept and delivered as required by law.

"No act or determination of the court in the discharge of the duties imposed upon it by this section shall be conclusive in the trial of any contested election.

"For the purposes of this section the Superior Court shall consist in New Castle County of the Chief Justice and the resident Associate Judge; in Kent County of the Chancellor and the resident Associate Judge; and in Sussex County of the resident Associate Judge and the remaining Associate Judge."

The petitioner's argument is that this section determines the limits of the jurisdiction of the Superior Court to sit as a Board of Canvass; that such jurisdiction is restricted (1) to the canvass of the general election and (2) to such other jurisdiction as had been vested in the boards of canvass prior to the adoption of the Constitution; and that the canvass of a municipal election does not fall in either category.

There can be no doubt, we think, that the words "general election", as used in our Constitution, do not include

municipal elections. Thus, Art. V, Sec. 3, dealing with challenges for bribery, refers to "any general or special or municipal election"; and the same phrase occurs in Sec. 7 of the same article. Other provisions of Article V refer only to the "general election". Thus Section 1 provides:

"The general election shall be held bienally on the Tuesday next after the first Monday in the month of November, * * *." and Section 4 provides:

"Registration shall be a prerequisite for voting only at general elections, at which Representatives to the General Assembly shall be chosen, unless the General Assembly shall otherwise provide by law."

The "general election" referred to in these sections does not include school or municipal elections. *Brennan v. Black*, *Del. Ch.*, 104 *A.* 2d 777. And, as pointed out in that case, the Debates of the Constitutional Convention of 1897 make it entirely clear that the phrase "general election" does not include school or municipal elections.

The phrase "general election" in Art. V, Sec. 6 of our Constitution does not include a municipal election, and the constitutional duty of the Superior Court to "ascertain the state of the election" casts no duty upon the court to canvass the vote at a municipal election.

But, although the Constitution does not require the court to canvass the municipal election, may the General Assembly require it to do so? The answer to this depends upon whether the Constitution, having defined the jurisdiction of the Superior Court in respect of the canvass, impliedly excludes any extension of that jurisdiction by the legislature. Even if there were no specific language in the Constitution bearing directly upon this point, it would certainly seem highly probable that the jurisdiction specified in the Constitution was intended to be exclusive, under the general principle that if the Constitution defines the powers, duties or qualifications of a public officer, the

legislature may not add to or subtract from them as so defined. See *Throop, Public Officers,* § 19; *Buckingham v. State ex rel. Killoran,* 42 *Del.* 405, 35 *A.* 2d 903.

But Section 6 contains within itself conclusive evidence that the General Assembly is forbidden to augment the jurisdiction conferred by that section. It is provided:

"The said court shall have all the *other jurisdiction and powers* now vested by law in the boards of canvass, and such *other powers* as shall be provided by law." [Emphasis supplied.]

As appears from the Journal of the Constitutional Convention, the first draft of this sentence omitted the word "jurisdiction" (see pp. 149-150); it was later added (see p. 220).

The meaning and effect of the quoted clause is clear. The jurisdiction of the Superior Court as a board of canvass extends to: (1) the canvass specified in the first paragraph of Section 6—the general election; and (2) the canvass of any other elections over which the former boards of canvass had jurisdiction. It extends no further, for although the General Assembly is given power to add to the *powers* of the court, it is expressly not given power to add to the jurisdiction of the court.

Now, the former boards of canvass had jurisdiction to canvass the vote at special elections, but had no jurisdiction whatever in respect of municipal elections. See *Code of* 1893, *Ch.* 18.

It would seem, therefore, that the legislative attempt to confer on the Board jurisdiction additional to that specified in Section 6 of Article V must fail.

The additional respondents, however, make the following contention:

The Constitution nowhere defines the phrase "general election", or specifies exactly what offices are to be filled at such an election. Certain State and County officers are required by the Constitution to be elected at the general election; but many

others are required by statute only to be so elected. Art. V, Sec. 6 requires the Superior Court to ascertain the state of the election "by calculating the aggregate amount of all the votes for each office that shall be given * * * for every person voted for for such office." Hence it is argued that the duty of the court extends to the canvass of the vote for "each office" voted for at the election; and that since the General Assembly may require municipal offices to be filled at the general election, the jurisdiction and duties of the Superior Court extend to the canvass of the vote for municipal officers.

The fallacy of this argument is manifest. It confuses the general election with the municipal election. The fact that municipal officers are elected on the day of the general election, by the same voting mechanics, does not convert the municipal election into a general election or make the municipal election a part of "the general election" as the phrase is used in the Constitution. It remains a municipal election, and as such is outside the provisions of Section 6 of Article V. This is because, as already noted, the historic distinction between the two kinds of election is fundamental.

Nor does the language of Section 6 referring to "each office" voted for aid the argument. This means, of course each office voted for at the general election—not those voted for at a municipal election. The "offices" referred to are not municipal offices. Indeed, in *State v. Churchman*, 3 *Penn.* 361, 51 *A.* 49, our Supreme Court said that as a general proposition the words "offices" or "officers" taken by themselves in a statute or constitution mean State or County offices or officers only and not offices or officers of municipal or other corporations. Whether this statement is too sweeping we need not inquire; we are satisfied that the word "office" in Section 6 refers to State or County offices of the kind that, historically, have customarily been voted for at the general election.

Additional respondents make the further point that even though the constitutional board of canvass created by Art. V, Sec. 6 cannot be compelled to canvass the municipal election,

yet the Superior Court may by statute be required to make the canvass, not as a constitutional board, but simply as judges performing a statutory duty. They rely on the well-known practice in this State, which this Court has recognized, under which the General Assembly may require the judges to perform administrative duties. See *In re Opinions of the Justices*, 8 *Terry* 117, 88 *A*. 2d 128, 139. Hence additional respondents argue that the judges of the Superior Court may by statute be required to canvass the vote at any municipal election and are so required by 15 *Del. C.* § 5701(b), quoted above.

An examination of § 5701, and of the original statute from which it derives (Act of June 1, 1898, 21 *Del. L.* c. 38, § 23) shows that, as stated above, it is in substance only a paraphrase of Art. V. Sec. 6 of the Constitution, to which sub-section (a)' specifically refers. The canvass referred to in the section is the canvass of the vote of the general election. The variations in language stressed by the additional respondents raise no inference whatever that the legislature was attempting to enlarge the jurisdiction of the Superior Court or to constitute it an extra-constitutional board of canvass. *State ex rel. Mitchell v. Wolcott*, 46 *Del.* 368, 83 *A*. 2d 762.

The additional respondents' point really comes to this: that although the legislature may not enlarge the constitutional jurisdiction of the court over the canvass, it may create a statutory jurisdiction over canvassing not controlled by the Constitution. This is only to say that there are no constitutional limits to the power of the General Assembly to impose canvassing duties upon the Superior Court. As we have already seen, the language of Art. V, Sec. 6 shows conclusively that the court's jurisdiction over canvassing was intended to be confined to the matters specified in the section. It confers upon the court certain jurisdiction in respect of canvassing the vote, and in effect says that that jurisdiction may not be enlarged. There is no room for any inference that any part of the field of the canvassing of votes by the Superior Court was left open to be occupied by the

General Assembly. The constitutional provisions are exclusive. *Cf. State ex rel. Green v. Collison,* 39 *Del.* 245, 197 *A.* 836.

We are of opinion that the three acts of 1955 above referred to, in so far as they attempt to require the Superior Court, sitting as a board of canvass, to canvass the vote of the municipal elections of the City of Wilmington, are unconstitutional and void.

This holding does not, of course, affect the other provisions of these acts. The act imposing upon the court the duty of canvassing the city election (50 *Del. L.* c. 390), contains a severability clause. 15 *Del. C.* § 7521 note. The intent of the legislature to change the date of the city election to the date of the general election, and the intent to make applicable to the city election the election machinery of the general election, are clear. These provisions are severable, and must be given effect, unless some other constitutional infirmity exists. They are clearly within the power of the General Assembly, for municipal corporations are creatures of the legislature, which may create, regulate, or abolish them almost at will. *Coyle v. McIntire,* 7 *Houst.* 44, 91, 98, 30 *A.* 728.

It is contended, however, that the whole of Chapter 390, relating to municipal elections in the City of Wilmington, is unconstitutional because it embraces more than one subject, and because the title is defective. Constitution of Delaware, Art. II, Sec. 16. It is certainly doubtful whether this contention, not even hinted at in the petition, is properly before us. However, we have concluded to consider it.

The title reads as follows:

"An Act to Amend Subchapter II of Chapter 75 of Title 15 of the Delaware Code, making all the provisions of Title 15 applicable to municipal elections held in the City of Wilmington, defining political parties, providing certifications of nominations, device of party, ballots, vacancies after printing of ballots and contests of elections."

The first objection is that the act not only amends the Code as indicated in the title, but also amends by implication the Charter of the City of Wilmington. The reference is to an implied repeal of 19 *Del. L.* c. 727, relating to municipal elections in the City of Wilmington. The act was passed by a two-thirds vote and therefore received the majority required to pass special acts of incorporation. It is apparent from a reading of the title that the act concerns the Wilmington city elections; necessarily it would supersede any prior statute (whether or not part of the city charter) dealing with that subject and inconsistent with the new statute. If petitioner's point is that every title of an act must contain a specific reference to all prior acts impliedly repealed, amended, or affected by it, we must disagree. We know of no authority for such a contention and none is cited. The argument really involves a contradiction in terms, because if an implied repeal must be expressly set forth in the title, or elsewhere, it ceases to be implied.

Petitioner's second objection is that the title is deceptive because the new provisions of Chapter 390 are not germane to the provisions of the act (15 *Del. C.* c. 75, subchapter II) that are expressly amended by it. For example, says petitioner, the former § 7522 relates to the printing of the ward numbers on the ballots; the new § 7522 defines a political party. *Kennedy v. Truss*, 40 *Del.* 424, 13 *A.* 2d 431 is relied upon. This case is inapposite. It merely holds that if a title expresses its subject only by reference to the subject matter and section or chapter number of the act amended, the body of the amendatory act must be germane to the subject of legislation contained in the act amended. Here the title is more than a reference to a general subject matter and a chapter number; it is a specification of the new matter contained in each new section. It is therefore sufficient.

We find no substance in the objection to the title of Chapter 390.

Petitioner makes another argument that we have difficulty in understanding. It appears to run as follows:

██ The constitution prohibits the creation of corporations except by general law, but this does not apply to municipal corporations, which *may* be created by special law. Art. IX, Sec. 1. Therefore, says petitioner (if we understand his point), a municipal charter *must* be amended by special law, and cannot be impliedly amended by an amendment to the Code, which embodies general law. The obvious answer to this argument is that it is a complete *non sequitur*. Why may not municipal charters be granted, amended or repealed by general law?

Our conclusion is that so much (but only so much) of the three statutes above referred to as attempts to require the Superior Court to canvass the vote of the city election is unconstitutional and void. The writ of prohibition must therefore issue, directing the Superior Court to cease from any further proceedings looking to the issuance by it of certificates of election to the successful candidates.

But in fact the canvass itself has been completed. The result of the election has been ascertained, as appears from the certificate now on deposit with the Clerk of this Court. So far as we are advised, no challenge to the correctness of the result was made during the canvass, nor has since been made. A canvass has therefore been made by a *de facto* (though not a *de jure*) board. What should be done with the certificate evidencing this canvass? Should it be destroyed, as a nullity, or is there any board or other body whose duty it is to make a legal canvass and to which the certificate should be transmitted, for such use as that board or body sees fit to make of it?

Petitioner insists that in granting of the writ of prohibition this Court has no power to do anything but instruct the Superior Court to take no further steps of any kind with respect to the vote at the city election, or with respect to the certificate showing the result. Issues touching the validity of the election, the proper board to make the canvass, and the effect to be given the *de facto* canvass, are issues, says petitioner, that are not raised by the pleadings and are not before us. The function of a

writ of prohibition, it is said, is strictly prohibitory, and nothing more; and even if it may on occasion extend to the grant of other relief this case furnishes no occasion for such an extension of the writ.

With this narrow view of the power of this Court in issuing a writ of prohibition to the Superior Court we do not agree, for two reasons:

First the writ of prohibition at law, though known as an "extraordinary remedy", is in effect simply the legal equivalent of the equitable remedy of injunction. True, it is directed only to a court, not to an individual, and it is used only in cases where a jurisdictional question is presented.

But in awarding the writ complete relief, according to the principles that govern injunctions in equity, may be given. 42 *Am. Jur. "Prohibition"*, § 47; 111 *Am. St. Rep.* 978 (annotation). Circuity of action will be avoided. *Havemeyer v. Superior Court*, 84 *Cal.* 327, 24 *P.* 121, 10 *L.R.A.* 627, 646.

In the instant case the canvass has been had. True, it has been made by an unauthorized board; but the counting of the vote is primarily a ministerial function. Irregularities in the canvass, such as the canvassing of the vote by an unauthorized board, cannot in themselves affect the validity of an election. See cases collected in the annotation to *People ex rel. Woods v. Green*, 265 *Ill.* 39, 106 *N. E.* 504, *Ann. Cas.* 1916A, 707, 713. The Superior Court cannot issue valid certificates of election; but we fail to see why its computation of the vote should not be made available to any board or public body that has the legal duty to issue such certificates, if there be any such board (a question later considered). If the ministerial work of counting and tabulating the returns has been performed, why must the paper evidencing the result be treated as a nullity? Why may it not be examined by the proper canvassing board and given whatever weight that board deems fit to give it?

Second, a practice has grown up in this State by which the similar remedy of *mandamus* to the Superior Court

sitting as a board of canvass is employed to obtain from the Supreme Court legal rulings on important questions of law affecting the result of the election. The Supreme Court has ruled on such questions, even though they are beyond the power of the board of canvass to consider. This practice, though perhaps an anomaly, has been approved, notwithstanding the principle that rulings arising in the course of the canvass are not conclusive if the election is thereafter contested. See the following cases: *State ex rel. Walker v. Harrington,* 42 *Del.* 246, 30 *A.* 2d 688 (constitutionality of Soldiers' Vote Act) ; *State ex rel. Wahl v. Richards,* 44 *Del.* 566, 64 *A.* 2d 400 (question of rejection of vote of entire election district because of illegal ballots) ; and *cf. State ex rel. Mitchell v. Wolcott, supra.*

The effect of these rulings may well have settled, as a practical matter, certain questions that could also have been made the basis for election contests. In the light of this established practice we think it appropriate in this case, and desirable in the public interest, to include in the writ of prohibition provisions designed to facilitate the settlement of questions relating to the canvass. The Superior Court as a board of canvass is not *functus officio* and remains subject to our jurisdiction.

This brings us to the final question: If the *de jure* canvass cannot be made by the Superior Court, by what body, if any, should it be made?

We have above noted that prior to the series of the three acts passed in 1955, relating to the Wilmington city election, the vote at that election was canvassed by the Department of Elections for New Castle County, successor in this respect to the Department of Elections for the City of Wilmington, *Act of April* 14, 1939, 42 *Del. L.* c 115. By that act the county department was vested with "all and every the rights, powers, and privileges which are now held possessed, enjoyed and exercised by the Department of Elections for the City of Wilmington". Prior to 1939 the city department of elections had canvassed the vote at the city election. *Act of April* 6, 1893, 19 *Del. L.* c. 727 Sec. 25.

The first of the 1955 acts (50 *Del. L.* c. 390), which requires the canvass to be made under Title 15 of the *Code*, contains the following repealing clause:

"All Acts or parts of Acts which are inconsistent with this Act are hereby repealed." 15 *Del. C.* § 7521 note.

In addition to this repealer, the third of the three 1955 acts (50 *Del. L.* c. 392) provides:

"That Chapter 727, Volume 19, Laws of Delaware, and any and all laws amendatory thereto be and the same are hereby repealed."

All three acts are *in pari materia* and must be construed together.

By reason of our holding that as to the canvass the laws are unconstitutional, do the repealers of the prior canvassing laws also fall?

 This question is answered by the opinion of this Court in *State ex rel. James v. Schorr*, 45 *Del.* 18, 41, 65 *A.* 2d 810, 821 (on reargument). The Court had previously held that an act of the General Assembly of April 15, 1947 (46 *Del. L.* c. 182) was unconstitutional in so far as Section 3 thereof attempted to create a board whose members (with one exception) were to be designated by the State Chairmen of the two leading political parties. See 45 *Del.* 18, 65 *A.* 2d 810, 822. The question on reargument was whether the repealing clause of Section 3 was still to be given effect, in which event there was no legal board of elections for New Castle County; or whether the repealer fell with the provisions of the statute declared void, in which event the former department of elections was restored. On this point the court unanimously held that:

"where a statute by express language repeals a former statute, and attempts to provide a substitute therefor by a method which is found to be unconstitutional, that portion of the statute which provides for the repeal of said former statute is void and of no effect."

■■ The question is basically one of legislative intent. In the instant case it is certain that the General Assembly intended to change the time and manner of the city election, and also the method of the canvass; but it cannot be reasonably supposed that it intended that there should be no canvass whatever if that substituted method of canvassing the vote should be invalid. Common sense dictates the conclusion that if the legislature had known that the vote could not constitutionally be canvassed by the Superior Court, it would not have repealed the old method of canvassing.

In the instant case the repealing clauses are found in Sec. 10 of 50 *Del. L.* c. 390 and in Sec. 1 of 50 *Del. L.* c. 392. We hold that these repealers are ineffectual in so far as they attempt to change the method of canvassing the vote of the city election.

■■ The vote at the city election of 1956 should, therefore, be canvassed by the Department of Elections of New Castle County, as successor to the former City Department of Elections. That board is not, however, a party to this proceeding and we can make no order binding it. Our jurisdiction is confined to the Superior Court.

It appears that the underlying certificates from the several election districts in Wilmington, showing the vote for all offices voted for, upon which the canvass is based, were executed in triplicate. One copy was delivered to the Prothonotary of New Castle County, one copy to the Superior Court, and one copy to the Department of Elections. The Superior Court used the first two copies in making its canvass. The writ of prohibition will therefore provide that the Superior Court (1) shall take no further action itself to announce the result of its canvass or to issue any certificates of election based thereon; and (2) shall upon written request of the Department of Elections, send to that Department for examination and return, the inspectors' certificates received by it from the several election districts of the City if the Department deems it desirable to procure such certificates for its examination.

As to the certificate of the Superior Court now deposited with the Clerk of this Court, the Clerk will be directed to transmit it forthwith to the Department of Elections for New Castle County, for such use as that Department may in its discretion see fit to make of it in connection with its duty to canvass the vote at the city election.

It is hardly necessary to add that nothing in this opinion, or in the order to be entered, is to be understood as attempting to adjudicate the title to office of either of the additional respondents or any of the other candidates at the municipal election. See *Constitution*, Art. V, Sec. 6.

Counsel are requested to collaborate upon a draft of an order to be entered in this cause, and, if they can agree, to submit it to the Court. If they are unable to agree, each side should submit its own draft.