**In the Matter of Application of SLAUGHTER BEACH WATER COMPANY for a General Increase In Rates, Filed April 3, 1979.**

Supreme Court of Delaware.

Submitted March 12, 1981.

Decided March 24, 1981.

---

John Terence Jaywork (argued) of Hudson, Jones & Jaywork, Dover, for appellant Town of Slaughter Beach.

James D. Griffin (argued) of Griffin & Hackett, P. A., Georgetown, for appellee Slaughter Beach Water Co.

George C. Hering, III (argued) and P. Clarkson Collins, Jr., of Morris, James, Hitchens & Williams, Wilmington, for appellee Public Service Commission.

Before DUFFY, McNEILLY and HORSEY, JJ.

HORSEY, Justice:

Intervenor, the Town of Slaughter Beach (the Town), appeals Superior Court's affirmance of the Public Service Commission's (Commission) award of a rate increase to Slaughter Beach Water Company (water company), a public utility privately owned and operated by Frank and Marilyn Draper.

Reversal is sought on two grounds: (1) that the Town, not the Commission, has jurisdiction over the water company; and (2) that the Commission's findings are not supported by substantial evidence and are arbitrary and capricious.

The Town's jurisdictional claim is based upon the Town's 1931 charter provision conferring power on the Town Commissioners to regulate public utilities operating within the Town. In 1936 the Town had granted a water franchise of 15 years to Slaughter Beach Corporation to service the Town's inhabitants. The Corporation ceased business about 1942 and in 1944 its assets were purchased by George H. Draper, Jr., the father of the present owner of the water company. Thereafter, George H. Draper, Jr. operated the water company as a sole proprietorship under the name "Slaughter Beach Water Company" until he sold the business to his son Frank in 1973. From 1973 to date the business has been operated by Frank and Marilyn Draper. Until the past few years the business was operated without salaried officers or employees.

The Town of Slaughter Beach which the water company serves comprises some 200 inhabitants who are largely summer residents. Over the period from 1944 to date, the Drapers have applied for and received two prior rate increases, both from the Public Service Commission, the first in 1965 and the second in 1977 (granted in June 1978). The present application for a further rate increase was filed with the Commission in April 1979.

I

The Town's jurisdictional claim fails for a number of reasons.* *First,* 1949 legislation creating the Public Service Commission conferred general jurisdiction on the Commission over "all" but "municipally owned" public utilities within the State, thereby creating a clear inconsistency with the Town's 1931 charter. Compare 47 *Del. Laws,* c. 254, section 2 with 37 *Del.Laws,* c. 167, section 5.

*Second,* any possible doubt as to legislative intent was removed by the Public Utilities Act of 1974 (59 *Del.Laws,* c. 397). The Act repealed by implication the Town's prior grant of authority (over public utilities operating within its boundaries) by creating an irreconcilable inconsistency between the special act and the general law under the doctrine of implied repeal. *Abrahams v. Superior Court,* Del.Supr., 131 A.2d 662 (1957); *City of Danville v. Ragland,* Va. Supr., 175 Va. 27, 7 S.E.2d 121 (1940) (stating that evidence of actual practice in conformity with the later general law confirmed the implied repeal).

---

* Intervenor essentially conceded the jurisdictional issue in its reply brief and at oral argument.

*Third,* the adoption by the Delaware General Assembly of the *Delaware Code Annotated,* Revised 1974, including 26 *Del.C.,* Ch. 1, by a vote of three-fourths of the members of each house of the General Assembly (60 *Del.Laws,* c. 56) was sufficient to accomplish the implied repeal of the Town's authority to regulate public utilities granted by special act of incorporation. *See Abrahams v. Superior Court, supra* and *Roy v. Williams,* Del.Supr., 382 A.2d 1351 (1978).

*Fourth,* 1 *Del.C.* § 105 does not exempt the Town's special act of incorporation from the power of the General Assembly to amend or repeal since "municipal corporations are creatures of the legislature." *Abrahams v. Superior Court, supra* at page 669.

*Fifth,* the Town's contention that an implied repeal of its charter authority over the regulation of the utility is an unconstitutional impairment of contract rights arising either by charter or by franchise agreement granted thereunder is without merit. *City of Pawhuska v. Pawhuska Oil & Gas Co.,* 250 U.S. 394, 39 S.Ct. 526, 63 L.Ed. 1054 (1919); *Hunter v. City of Pittsburgh,* 207 U.S. 161, 28 S.Ct. 40, 52 L.Ed. 151 (1907); 56 *Am.Jur.2d* Municipal Corporations § 100. Neither the water company nor the Town contends that the provisions of a franchise agreement entered into in 1936 between the Town and a corporation now dissolved have any relevance to the present proceeding. The authorities relied upon by the Town are inapposite.

## II

As to the second issue on appeal, the Town makes essentially three arguments: (1) that the Commission failed to hold water company to its burden of proof under 26 *Del.C.* § 307; (2) that the findings and rulings of the Commission are not supported by substantial evidence; and (3) that the 17 percent rate of return allowed by the Commission was arbitrary and capricious.

■ There is no merit to intervenor's contention that the Commission did not apply, and that water company did not meet, the burden of proof requirements of 26 *Del.C.* § 307. The Commission expressly found water company to have "fulfilled its statutory burden by proving that its current rates were not covering its expenses and that an increase in rates is justified." The Commission also found applicant's records, though deficient in some respects, to conform generally with records systems recommended for small water companies. And to enable the company to establish a better record keeping system in the future, the Commission added to the company's operating expenses rate base a sum for the employment of a professional accountant. As to the company's submitted operating expense statement, the Commission accepted only those items which it found to be supported and proper under the law and rejected those that did not meet such criteria.

We also find no merit to intervenor's contentions (a) that the Commission's rate base finding of $13,901 for the company's operating expenses was not supported by sufficient evidence and (b) that the Commission's determination of a pretax rate of return of $2,277 (17 percent) was arbitrary and capricious. The Commission's findings are to be upheld if not contrary to law, supported by sufficient evidence and not arbitrary or capricious. 26 *Del.C.* § 510(c). In considering factual issues, § 510(c) mandates that a reviewing court "shall take due account of the presumption of official regularity and the quasi-legislative function and specialized competence of the Commission."

■ The major operating expense item disputed by the Town is the Commission's allowance of $7,000 for salaries and general administrative services. Intervenor objects to this item on the ground that it represents a 100% increase over the $3,900 granted by the Commission in April 1978 on water company's 1977 application. The Commission expressly considered and rejected intervenor's argument. The Commission noted that the items should not only include reasonable compensation for the services of the sole proprietor and his wife but also should take into consideration the cost of employ-

ing competent outside help to meet "the demands of the consuming public," should owner or his wife not be available when needed on nights, holidays or weekends. Such costs had not been taken into account at the prior rate hearing; and the estimated cost to hire a manager to do the work that Draper and his wife had performed was estimated to be between $12,000 and $14,000 per year. Clearly, there was sufficient evidence to support the Commission's finding; and a reviewing court may not substitute its judgment in such a matter for that of the Commission. *Application of Wilmington Suburban Water Corp.*, Del. Supr., 211 A.2d 602 (1965); *Application of Diamond State Telephone Co.*, Del.Supr., 113 A.2d 437 (1955).

■ As to the remaining operating expense items approved by the Commission but contested by the Town, the Town contends the amounts allowed for repairs and maintenance, transportation and professional fees (primarily for accounting services) are excessive by $892. The amounts were supported by the Hearing Examiner and the Commission's consultant; and we defer to the "specialized competence" of the Commission in determining the reasonableness of such allowances. 26 *Del.C.* § 510(c).

■ Finally, the Commission's allowance of a 17 percent pre-tax rate of return was clearly supported by the evidence. The figure was testified to by one of the Commission's expert witnesses as "appropriate" and was recommended by the Hearing Examiner. The rate of return was only six-tenths of a percent higher than the previously fixed rate despite the company having operated at a loss since the previous rate increase. It was not improper for the Commission to set a fair rate of return based upon a capital structure as it should be rather than as it may actually exist. 64 *Am.Jur.2d*, Public Utilities, § 193.

Affirmed.